## PHILIP G. COCKS v. CROSBY S. SIMMONS ET AL.

1. DECREE.   *Infant.   Service of process.   Recital.*
   A chancery decree for the sale of a minor's land cannot be impeached, in a collateral proceeding, if the order appointing a guardian *ad litem* recites that summons was duly executed on the minor, although the only summons shown by the record was served, not on him, but on a person erroneously styled his guardian.

2. SAME.   *Service on parent or guardian.   Code 1857, p. 489, art. 64.*
   Such a recital in the order renders valid, collaterally, a decree of partition, although the summons was served only on the infant, who had no father or guardian living, as shown by the record, which is silent as to his mother.

3. RES ADJUDICATA.  *Infant.  Negligence of guardian ad litem.*
   An infant defendant is concluded by the decree enforcing a vendor's lien on his land, although he had a title which his guardian *ad litem* failed to assert.

4. CHANCERY JURISDICTION.  *Partition.  Sale of infant's land.*
   A court of equity can order land to be sold for partition among joint tenants, some of whom are minors.  *Wilson* v. *Duncan*, 44 Miss. 642, affirmed.

5. INFANT.  *Purchase.  Estoppel to disaffirm.*
   An infant entitled to an eighth of the purchase-money of land, who, at a sale to enforce the vendor's lien, purchases with the seven others, cannot so repudiate his purchase as to avoid a subsequent sale of the land, made under partition proceedings between the eight purchasers.

6. DELIVERY OF DEED.  *Evidence.  Competency and sufficiency.*
   The delivery of a deed, produced in an action of ejectment by the party who relies thereon, is a question for the jury, and it is erroneous for the court to exclude the deed from their consideration on the ground that it was never delivered.

7. COMMISSIONER'S DEED.  *Delivery.  Report and confirmation.*
   A deed executed and acknowledged by a commissioner, appointed by decree to sell and convey land, is delivered, when the court confirms his report of sale and conveyance, although he retains manual possession of the deed.

8. SAME.  *Estoppel by record.*
   As against a purchaser, who has paid for and is equitably entitled to the land, parties to the record which contains such recitals are estopped to deny the delivery of the deed.

9. SAME.  *Injunction   Dissolution.*
   If such deed is made under a sale by the court, in violation of the terms of an injunction which has previously issued from the same court, the injunction may be regarded as dissolved, in considering the validity of the purchaser's title.

10. SAME.  *Violation of injunction.*
   One who is not a party to the injunction bill, cannot complain of such violation of the injunction.

11. SAME.  *Agreement between counsel.*
   An agreement, between the counsel in the two cases, that the commissioner shall hold the deed and the purchaser enough money to answer the injunction suit, does not prevent the title to the land sold from passing to the purchaser.

ERROR to the Circuit Court of Holmes County.
Hon. W. COTHRAN, Judge.

*Nugent & McWillie*, for the plaintiff in error.

1. The purchaser is to be considered as contracting with the court by which the sale was made through its agent, the commissioner. *Andrews* v. *Scotton*, 2 Bland, 629, 642. A collateral attack is allowable only in case the sale is void. *Anderson* v. *Roberts*, 18 Johns. 515. This cannot be if it is valid as to some persons, but may be avoided at the election of others, or if it is capable of confirmation or ratification. *Boyd* v. *Blankman*, 29 Cal. 35. That only is void which is done against law, at the very time of doing it, and when no person is bound by the act. Bacon's Abr. title Void; *Anderson* v. *Roberts*, 18 Johns. 527; *Hahn* v. *Kelly*, 34 Cal. 391. In case of an attempted service of process, the presumption is that the court considered and determined whether the acts done were sufficient; and the conclusion reached by the court, from hearing and deliberating upon a matter, which it was authorized by law to decide, cannot be void, though erroneous. Freeman on Judgments, §§ 126, 130; *United States* v. *Arredondo*, 6 Peters, 691; *Reeve* v. *Kennedy*, 43 Cal. 643; *Campbell* v. *Hays*, 41 Miss. 561; *Isaacs* v. *Price*, 2 Dillon, 351; *Kipp* v. *Fullerton*, 4 Minn. 480; *Cole* v. *Butler*, 43 Maine, 403; *Hendrick* v. *Whittemore*, 105 Mass. 23; *Cook* v. *Darling*, 18 Pick. 393; *Finneran* v. *Leonard*, 7 Allen, 54; *Joyce* v. *McAvoy*, 31 Cal. 273; *Dixcy* v. *Laning*, 49 Penn. St. 143; *Wimberly* v. *Hurst*, 33 Ill. 166; *Day* v. *Kerr*, 7 Mo. 426; *Hamilton Building Association* v. *Reynolds*, 5 Duer, 671; *Mills* v. *Alexander*, 21 Texas, 154; *Hammond* v. *Wilder*, 25 Vt. 342; *Faulkner* v. *Guild*, 10 Wis. 563; *Sears* v. *Terry*, 26 Conn. 273; *Yaple* v. *Titus*, 41 Penn. St. 195; *State* v. *Conoly*, 6 Ired. 243; *Sheldon* v. *Newton*, 3 Ohio St. 494; *Smith* v. *Smith*, 22 Iowa, 516; *Crutchfield* v. *State*, 24 Ga. 335; *Morrison* v. *Austin*, 14 Wis. 601; *Ponder* v. *Moseley*, 2 Fla. 207; *Whitwell* v. *Barbier*, 7 Cal. 63; *Thompson* v. *Tolmie*, 2 Peters, 157; *Wyman* v. *Campbell*, 6 Porter, 226. The record, which imports absolute verity, and is to be tried by itself, must show affirmatively a want of jurisdiction to make the decree a nullity. Code 1857, p. 542, art. 15; *Hahn* v. *Kelly*, 34 Cal. 424, 425; *Quivey* v. *Baker*, 37 Cal. 465; *Hardy* v. *Gholson*, 26 Miss. 70; *Foot* v. *Stevens*, 17

Wend. 483 ; 2 Bur. Law Dic., title Record ; 3 Black. Com. 24; *Knight's Case*, 1 Salk. 329 ; *Croswell* v. *Byrnes*, 9 Johns. 287, 290. Our own decisions do not militate against the rule. *Gwin* v. *McCarroll*, 1 S. & M. 351; *Smith* v. *Bradley*, 6 S. & M. 492 ; *Foute* v. *McDonald*, 27 Miss. 610 ; *Wall* v. *Wall*, 28 Miss. 413 ; *Cason* v. *Cason*, 31 Miss. 578 ; *Campbell* v. *Brown*, 6 How. 106 ; *Cannon* v. *Cooper*, 39 Miss. 784, and *Moore* v. *Ware*, 51 Miss. 206. The counsel then reviewed *Winston* v. *Miller*, 12 S. & M. 550; *Price* v. *Crone*, 44 Miss. 571 ; *Ingersoll* v. *Ingersoll*, 42 Miss. 155 ; *Johnson* v. *McCabe*, 42 Miss. 255, and *Erwin* v. *Carson*, 54 Miss. 282, contending that this court had never declared that the decrees in those cases were nullities and liable to collateral attack, but had maintained the contrary doctrine in *Hanks* v. *Neal*, 44 Miss. 212. The latter principle was announced in *Blaine* v. *The Charles Carter*, 4 Cranch, 328, 333 ; *Wheaton* v. *Sexton*, 4 Wheat. 506 ; *Elliott* v. *Piersol*, 1 Peters, 340 ; *Tayloe* v. *Thomson*, 5 Peters, 358 ; *United States* v. *Arredondo*, 6 Peters, 728, 730 ; *Voorhees* v. *Bank of United States*, 10 Peters, 449 ; *Cocke* v. *Halsey*, 16 Peters, 87 ; *Cooper* v. *Reynolds*, 10 Wall. 308, and *Ludlow* v. *Johnson*, 3 Ohio, 560. And in *Wyndham* v. *Wyndham*, 3 Ch. Rep. 22, the Lord Keeper sustained the title of purchasers for valuable consideration under an irregular decree ; for " otherwise," he said, " you will, like gunpowder, blow up the whole Court of Chancery."

2. Did the Chancery Court have jurisdiction of the subject-matter of the partition suit ? If this court acts upon the wise maxim of *stare decisis*, the question is fully answered in *Wilson* v. *Duncan*, 44 Miss. 642, and re-announced in *Pankey* v. *Howard*, 47 Miss. 83, and *Spight* v. *Waldron*, 51 Miss. 356. Aside from these cases the concurrent jurisdiction of courts of chancery in cases of partition seems to be universally admitted. 2 Story Eq. Jur. ch. 14. But we refer to special cases in which the question is set at rest forever. *Haywood* v. *Judson*, 4 Barb. 228, was a case similar to this. In *House* v. *Falconer*, 4 Desauss. 86, the bill was filed against infants and the lands were decreed to be sold; and in *Lawes* v. *Lumpkin*, 18 Md. 334, it was adjudged that a court of equity may entertain a bill filed by an adult heir, against the widow and minor

heirs, to obtain a sale and partition of the property of the deceased ancestor. The following cases also affirm the doctrine contended for: *Thayer* v. *Lane*, Harr. (Mich.) 247; *Howey* v. *Goings*, 13 Ill. 95; *Kennedy* v. *Kennedy*, 43 Penn. St. 413; *Hopper* v. *Fisher*, 2 Head, 253; *Castleman* v. *Veitch*, 3 Rand. 598; *Hartshorne* v. *Hartshorne*, 2 N. J. Eq. 349; *Wright* v. *Marsh*, 2 G. Greene, 94; *Donnell* v. *Mateer*, 7 Ired. Eq. 94; *Rabb* v. *Aiken*, 2 McCord Ch. 118; *Wiseley* v. *Findlay*, 3 Rand. 361; *Shull* v. *Kennon*, 12 Ind. 34; *Thornton* v. *Thornton*, 27 Mo. 302; *Patton* v. *Wagner*, 19 Ark. 233; *Smith* v. *Smith*, 10 Paige, 470.

3. The objection made by the defendants in error to the record, in the proceeding to enforce the vendor's lien, was that it in no wise affected their title as plaintiffs in this suit, claiming as the heirs of James Simmons; and the court erroneously held that they were not bound thereby. The complainant was only required to state his case in his bill, and make all persons interested in the land defendants. *Cockrell* v. *Gurley*, 26 Ala. 405; Story Eq. Pl. §§ 72, 76 *a.* If the minors had a title paramount or any other defence, they should have set it up by plea or answer. In a collateral proceeding, the only question is, whether, on the bill as framed, a decree on the merits and complete justice could be had between the parties. *Elmendorf* v. *Taylor*, 10 Wheat. 152; *Kirkham* v. *Justice*, 17 Ill. 107; *Sneed* v. *Ewing*, 5 J. J. Marsh. 460. The plaintiff in error, in tracing title, is not, however, compelled to go back to the suit to foreclose the vendor's lien. That proceeding culminated in a sale under decree and a purchase by the plaintiffs in this ejectment, who are bound by the subsequent partition proceeding based on their purchase, to which they were parties, and the plaintiff in error need not look beyond the decree in the latter case.

4. The court also erred in not allowing Philip G. Cocks to prove that the purchase-money had been paid, and in considering the testimony of the commissioner, Stigler, to disprove the execution and delivery of his deed. Although by agreement of counsel the deed was left in his hands as security both for the unpaid purchase-money and to await the result of the injunction suit, yet Stigler held the deed for Cocks, and the

sale became final the instant the report was made and confirmed. *Blossom* v. *Railroad Co.* 3 Wall. 207 ; 2 Dan. Ch. Prac. 1279. The deed had been delivered. *Byers* v. *McClanahan*, 6 Gill & J. 250 ; *Shirley* v. *Ayres*, 14 Ohio, 307 ; 2 Stark. Evid. 477 ; 4 Kent Com. 454 ; *Farrar* v. *Bridges*, 5 Humph. 411 ; *Brown* v. *Austen*, 35 Barb. 341. If a grantor executes a deed and leaves it with a third person, at the request of the grantee, it will be a sufficient delivery. *Hatch* v. *Bates*, 54 Maine, 136 ; *Turner* v. *Whidden*, 22 Maine, 121 ; *Morrison* v. *Kelly*, 22 Ill. 610 ; *Wheelwright* v. *Wheelwright*, 2 Mass. 447 ; *Kane* v. *Mackin*, 9 S. & M. 387 ; *Buffum* v. *Green*, 5 N. H. 71 ; *Church* v. *Gilman*, 15 Wend. 656 ; *Ruggles* v. *Lawson*, 13 Johns. 285 ; *Cincinnati Railroad Co.* v. *Iliff*, 13 Ohio St. 235 ; *Stephens* v. *Huss*, 54 Penn. St. 20 ; *Eckman* v. *Eckman*, 55 Penn. St. 269 ; *Halluck* v. *Bush*, 2 Root, 26 ; *Wall* v. *Wall*, 30 Miss. 91 ; *McLure* v. *Colclough*, 17 Ala. 96 ; *Rivard* v. *Walker*, 39 Ill. 413 ; *Mallett* v. *Page*, 8 Ind. 364 ; *Stevens* v. *Hatch*, 6 Minn. 64 ; *Warren* v. *Swett*, 31 N. H. 332 ; *Floyd* v. *Taylor*, 12 Ired. 47 ; *Dayton* v. *Newman*, 19 Penn. St. 194 ; *Harris* v. *Saunders*, 2 Strob. Eq. 370.

*W. L. Nugent*, on the same side, argued the case orally.

*H. S. Allen*, on the same side.

1. The sale of the land for division cannot be impeached in this proceeding. Process in chancery must be served as in the Circuit Court. Code 1857, p. 544, art. 27. And a return of " executed " renders the decree irregular only. *Merritt* v. *White*, 37 Miss. 438 ; *Robertson* v. *Johnson*, 40 Miss. 500. In the partition suit there was due service on the minors, but none on their mother. If there is imperfect service on an adult, and he answers, all defects are cured ; and if there is an incomplete service on minors, and they answer by guardian *ad litem*, as in that case, deficiencies in the service of process are remedied, and the decree is valid.

2. The bill was not for partition, but for a sale to divide the proceeds. The Chancery Court has a general jurisdiction over the subject-matter. *Wilson* v. *Duncan*, 44 Miss. 642 ; *Higginbottom* v. *Short*, 25 Miss. 160. And when the court has original jurisdiction recitals in the decree are regarded as true, unless the contrary appears from other parts of the record. *Commer-*

*cial Bank* v. *Martin*, 9 S. & M. 613; *Pouns* v. *Gartman*, 29 Miss. 133; *Martin* v. *Williams*, 42 Miss. 210; *Harris* v. *Ransom*, 24 Miss. 504; *Frisby* v. *Harrisson*, 30 Miss. 452; *Pollock* v. *Buie*, 43 Miss. 140; *Hardy* v. *Gholson*, 26 Miss. 70; *Cannon* v. *Cooper*, 39 Miss. 784; *Monk* v. *Horne*, 38 Miss. 100. Even if the decree was erroneous, the purchaser acquired a good title. *Wilson* v. *Duncan*, 44 Miss. 642.

*C. V. Gwin*, for the defendants in error, made an oral argument and filed a brief.

1. The first ground of objection to the deed from the commissioner to the defendant's father was that it had never been delivered to the father, nor to any one for him, during his lifetime. The sale had been enjoined in another suit in the same court, so that no valid delivery could be made, and by agreement between the counsel representing all the parties in both suits the deed was retained by the commissioner. The plaintiff in error claimed the legal title as defendant in the ejectment suit, in which that title alone could be considered. Delivery of the deed to a grantee capable of receiving it was as essential as the signature or seal. 3 Wash. Real Prop. 239; *Kearny* v. *Jeffries*, 48 Miss. 343; *Jelks* v. *Barrett*, 52 Miss. 315; *Morgan* v. *Hazlehurst Lodge*, 53 Miss. 665. The right of Philip G. Cocks' father under the contract of purchase, confirmed by the court, was only an equity. *Williamson* v. *Berry*, 8 How. (U. S.) 495; *Macy* v. *Raymond*, 9 Pick. 285; *Leshey* v. *Gardner*, 3 Watts & Serg. 314; *Rawlings* v. *Bailey*, 15 Ill. 178; *Blossom* v. *Railroad Co.*, 3 Wall. 207; *Childress* v. *Hurt*, 2 Swan, 487; *Robinson's Appeal*, 62 Penn. St. 213. Confirming the report of a chancery sale simply completes the contract, and does not pass the legal title. *Webster* v. *Hill*, 3 Sneed, 333.

2. Under our system a court of chancery cannot sell land for partition among joint tenants, some of whom are minors. The decision in *Wilson* v. *Duncan*, 44 Miss. 642, is wrong. Prior to 31 & 32 Henry VIII., none but parceners could compel partition The jurisdiction of courts of law and equity was concurrent until 3 & 4 William IV. abolished the former. At common law, and under the English statutes, the court had no power to sell the land. Reviewing also the act of June

10, 1822 (Hutch. Code 611), which was a transcript of that of March 4, 1803, and a substantial re-enactment of 31 & 32 Henry VIII., and the act of Nov. 26, 1821 (Hutch. Code 670), the act of Dec. 16, 1830 (Hutch. Code 677), the act of Dec. 25, 1833 (Hutch. Code 679), and Code 1857, p. 316, art. 48, p. 454, art. 117, p. 464, art. 153, counsel contended that the general system of legislation on the subject-matter of the statute, which should be considered in determining its construction (*Fort* v. *Burch*, 6 Barb. 60; *United States* v. *Collier*, 3 Blatch. 325), showed the legislative intent to deny to courts of law and equity the power to partition land where minors were interested. This intent was in harmony with the constitution of 1832, the design of which, with the legislation thereunder, was to place the estates of minors held by descent or devise, in the exclusive control of the Probate Court. *Smith* v. *Craig*, 10 S. & M. 447. The Chancery Court had no jurisdiction to order the sale of an infant's real estate, unless conferred by statute. *Taylor* v. *Philips*, 2 Ves. 23; *Russel* v. *Russel*, 1 Molloy, 525; *Rogers* v. *Dill*, 6 Hill, 415. The power was not conferred by Code 1857, p. 316, art. 48, to the benefit of which only adult co-owners of land were entitled, or by Code 1857, p. 551, art. 73. Under the Constitution Chancery Courts might divide land where the parties could have partition at law, and the latter statute authorized a sale in cases in which partition could be decreed. This was merely giving a remedy by the speedier and more effectual machinery of the Chancery Court, to supply the deficiencies of the proceeding at law. Minors were excluded at law. They could not apply in chancery, because the statutes (Code 1857, p. 454, art. 117, p. 464, art. 153) giving them the new right specified the tribunal to enforce it. Potter's Dwarris, 295; *Millar* v. *Taylor*, 4 Burr. 2303; *Smith* v. *Lockwood*, 13 Barb. 209. Sale of infants' lands, which was "orphans' business," could be made only on application of their guardian, and by sanction of the Probate Court. The Chancery Court had no jurisdiction of the subject-matter.

3. Nor had the court, in that suit, jurisdiction over the persons of the plaintiffs in this, for want of service of process, and the decree as to them was void. The writ was served on these infants who were without father or guardian, but not on their

mother, who, as the record fails to disclose her death, is presumed to be living. Such service was fatally defective, and the decree thereon was not voidable, but void. Code 1857, p. 489, art. 64; *Ingersoll* v. *Ingersoll*, 42 Miss. 155; *Johnson* v. *McCabe*, 42 Miss. 255; *Price* v. *Crone*, 44 Miss. 571; *Erwin* v. *Carson*, 54 Miss. 282. In the vendor's lien suit this reasoning applies with greater force, for there the infants were not served at all, but the writ was executed on a person as their guardian, who was not such guardian.

4. The title which the plaintiffs in ejectment have as heirs of James Simmons was not affected by the decree in the suit to enforce the vendor's lien against them as the representatives of Crosby S. Skidmore. The bill in that case puts nothing in issue but the claim against Skidmore. The heirs of Simmons are legally distinct from Skidmore's heirs, although actually the same persons, and they are not bound in the capacity in which they were not sued. Freeman on Judgments, § 162; *Winslow* v. *Grindal*, 2 Greenl. 64; 2 Smith's Lead. Cas. 589; *Brooking* v. *Dearmond*, 27 Ga. 58; *Robinson's Case*, 5 Coke, 32 *b; Benz* v. *Hines*, 3 Kansas, 390; 4 Com. Dig. title Estoppel C; Bigelow on Estoppel, 65; *Dale* v. *Rosevelt*, 1 Paige, 35; *Werkheiser* v. *Werkheiser*, 3 Rawle, 326; *Wood* v. *Jackson*, 18 Wend. 107; *Nash* v. *Cutler*, 16 Pick. 491; Freeman on Judgments, § 156; *Screven* v. *Joyner*, 1 Hill Ch. 252; *Jones* v. *Blake*, 2 Hill Ch. 629; *Singleton* v. *Gayle*, 8 Porter, 270; *Stoops* v. *Woods*, 45 Cal. 439; *Rathbone* v. *Hooney*, 58 N. Y. 463; *Middleton's Case*, 5 Coke, 28 *b; Legge* v. *Edmonds*, 25 L. J. Ch. 125; *Fenwick* v. *Thornton*, Moody & M. 51; *Metters* v. *Brown*, 1 Hurl. & C. 686. A former judgment or decree is conclusive only as to facts directly in issue, and the finding of which were necessary to uphold it, and the estoppel does not extend to those which may have been in controversy, but which rested in evidence and were merely collateral. *Hunter* v. *Davis*, 19 Ga. 413; *St. Romes* v. *Carondelet Canal & Navigation Co.*, 24 La. An. 331; *Glass* v. *Wheeliss*, 24 La. An. 397; *Garwood* v. *Garwood*, 29 Cal. 521; *King* v. *Chase*, 15 N. H. 9; *Land* v. *Keirn*, 52 Miss. 341; Freeman on Judgments, §§ 257, 258. No judgment or decree is evidence in relation to any matter

which came collaterally in question. *Lawrence* v. *Hunt*, 10 Wend. 80; *Jackson* v. *Wood*, 3 Wend. 27; *Wood* v. *Jackson*, 8 Wend. 9, 35; *Hopkins* v. *Lee*, 6 Wheat. 109; *Lewis & Nelson's Appeal*, 67 Penn St. 153; 1 Greenl. Evid. § 528 *et seq.*; Freeman on Judgments, §§ 258, 259. The conveyance under the vendor's lien sale is not binding on these plaintiffs, who, as infants, were incompetent to make that contract. Only the interests in issue in the suit to divide the land were affected thereby, and under Code 1857, p. 320, art. 64; Code 1871, §§ 1265, 1838, the plaintiffs in this suit are not concluded by that decree, but may show that they were not tenants in common with the other parties. If, therefore, both decrees had been valid, the rights by virtue of which the plaintiffs sue in ejectment are not affected by them, and Philip G. Cocks, who claims through those decrees, must yield to the plaintiffs' superior title.

*Frank Johnston*, on the same side, argued orally and in writing.

The court did not, in the proceeding on which either decree is based, acquire jurisdiction over the minors, because of the defects in the service of process. *Price* v. *Crone*, 44 Miss. 571; *Erwin* v. *Carson*, 54 Miss. 282. In the case of an infant, no actual notice can be given, and a defect in service cannot be likened to an imperfect return as to an adult defendant, where notice *in fact* is brought home to him, though in an irregular mode. The rule as to constructive service, therefore, should apply in this case, *Hallett* v. *Righters*, 13 How. Pr. 43; and a serious defect should render the decree void, *Borden* v. *Fitch*, 15 Johns. 121; *Bigelow* v. *Stearns*, 19 Johns. 39. Constructive service must follow the statute, to give the court jurisdiction. *Boyland* v. *Boyland*, 18 Ill. 551; *Brownfield* v. *Dyer*, 7 Bush, 505; *Hollingsworth* v. *Barbour*, 4 Peters, 466; *Shields* v. *Miller*, 9 Kansas, 390; *Dean* v. *Nelson*, 10 Wall. 158; *Kitsmiller* v. *Kitchen*, 24 Iowa, 163; *Knott* v. *Jarboe*, 1 Met. (Ky.) 504; *Herdman* v. *Short*, 18 Ill. 59; *Whitney* v. *Porter*, 23 Ill. 445; *Fontaine* v. *Houston*, 58 Ind. 316; *Bradley* v. *Jamison*, 46 Iowa, 68; *Smith* v. *Wells*, 69 N. Y. 600. There is no force in the argument that the court had jurisdiction because it so declared in the orders ap-

pointing the guardians *ad litem*. A court cannot acquire jurisdiction over a person by deciding that it has jurisdiction. The writs and returns are as much parts of the record as the decrees, and the former show that the recitals in the latter are errors. The returns showing that the services were not legal, the decrees cannot make them so. *Harrison* v. *Agricultural Bank*, 2 S. & M. 307; *Pouns* v. *Gartman*, 29 Miss. 133; *Martin* v. *Williams*, 42 Miss. 210. The decrees are therefore void, *Dogan* v. *Brown*, 44 Miss. 235; and can be attacked collaterally.

GEORGE, C. J., delivered the opinion of the court.

This is an action of ejectment for the recovery of a valuable plantation in Holmes County, and resulted in a verdict and judgment for the plaintiffs in the court below, from which the defendant sued out this writ of error. Both parties claimed under Samuel B. Simmons. The plaintiffs deraigned title from said Samuel B. Simmons by introducing a deed from him to Crosby S. Skidmore, dated Nov. 14, 1859, by which the plantation in controversy, consisting of eleven hundred and sixty-six acres, was conveyed to said Crosby S. Skidmore, for the consideration of $64,000, which sum appeared on the face of the deed to be payable in annual instalments, the last one falling due on Jan. 1, 1869. In this deed was also an express reservation of a lien on the land, to secure the payment of the purchase-money. The plaintiffs then introduced a deed from said Crosby S. Skidmore to James Simmons, dated also on Nov. 14, 1859, by which seven hundred and thirty acres of the tract, designated by land office numbers, were conveyed to said James Simmons, for the consideration of $10,000, which was acknowledged in the deed to have been then paid. C. S. Simmons, one of the plaintiffs below, then testified that he and his co-plaintiff were the children and sole heirs of said James Simmons, the grantee in the last-mentioned deed, who died, in possession of the land sued for, in the year 1862; that James Simmons was also a child of Samuel B. Simmons, the grantor in the first-named deed; that the plaintiffs were also the children and sole heirs of Ann Augusta Skidmore, who was a child and one of the heirs of Crosby S. Skidmore, the

grantee in the said first-mentioned deed; and that their mother died in 1861. The plaintiffs claimed the seven hundred and thirty acres embraced in the deed of their maternal grandfather, said Crosby S. Skidmore, as heirs of their father, James Simmons, who, as before shown, had received a deed therefor from said Crosby S. Skidmore; and they claimed an undivided one-fourth interest in the remaining four hundred and thirty-six acres, as heirs of their mother, who was one of the four heirs of said Crosby S. Skidmore. The defendant in the court below deraigned his title as follows: He offered in evidence a record of certain proceedings in the Chancery Court of Holmes County, in which the executor of Samuel B. Simmons (the grantor in the deed to Crosby S. Skidmore) obtained a decree against the executor and heirs of said Skidmore, condemning the whole eleven hundred and sixty-six acres to be sold for the unpaid purchase-money due to said Samuel B. Simmons. This record shows that a sale was made in pursuance of the decree, and that the eight heirs of said Samuel B. Simmons were the purchasers, each heir to take an undivided interest in the land, according to his right in the estate of said Samuel B. Simmons; and the amount of each share was specified in the deed. The plaintiffs below were mentioned in the deed among the grantees, and as heirs of said Samuel B. Simmons (their grandfather) entitled, together, to one-eighth part of the land. The defendant below then further offered in evidence a record of certain other proceedings of the Chancery Court of Holmes County, in which three of the heirs of said Samuel B. Simmons procured a decree against the other heirs (including the plaintiffs in the court below) for a sale of the whole tract of eleven hundred and sixty-six acres, for partition. This decree was dated Aug. 29, 1870, and a sale was made under it in the following November, which was confirmed by the court in February, 1871. At this sale John G. Cocks, the father of the defendant below, became the purchaser, at the price of $18,172. If these proceedings in the Chancery Court were valid, the defendant below had a good title to the land, and the judgment should have been in his favor. Various objections are made to these proceedings, and it is insisted that they were void. This view received the

sanction of the court below, which excluded said records and the deeds founded upon them from the jury. We will now proceed to notice, *seriatim*, the objections urged to the validity of the proceedings.

It is urged that the decree in the suit to enforce the vendor's lien is void, because it does not appear from the record that the plaintiffs below, who were minors, were made parties to that suit. The summons appears to have been issued against these plaintiffs, who are stated in it to be infants, having one Carraway as their guardian. Carraway is also stated in the bill to be their guardian. This summons was returned executed on him, and the return was silent as to the infants. It was also shown by the answer of the defendants in that suit, that the person named as guardian was not, in fact, guardian. The return, therefore, was no service on the infants. It was not a defective service, nor a defective return of service, but it was no service at all. If this were all that the record contained as to the jurisdiction of the court over these parties, the decree would be void as to them. The court, however, in the order appointing a guardian *ad litem* for these minors, makes this recital, " It appearing to the satisfaction of the court that subpœna or summons has been duly executed upon the minor defendants in this cause," and then proceeds to name the infants, among whom are the plaintiffs below; and thereupon J. S. Hoskins is appointed guardian *ad litem*, and ordered to defend for the infants. Here is a distinct and unequivocal adjudication, made by the court, as to a matter upon which it was bound to make an examination and decision, as a prerequisite to the order which it was then about to make. Unless the court was satisfied that process had been duly served on the defendants, it was bound not to make an order appointing the guardian *ad litem*, and it was bound also to arrest the proceedings in the cause until such process was served. Under such circumstances, the recital in the order must be held to be the solemn adjudication of the court that process had been duly served. Nor can it be rightfully said that the adjudication thus made is in opposition to the record, which discloses a summons only served on a person who was not guardian for these infants; for, notwithstanding this, the

court may have ordered, as was its plain duty, an *alias* summons, which may have been returned properly executed ; and in the lapse of time which has since occurred it may have been lost from the files. Especially would this be a reasonable presumption when we take into consideration the known carelessness with which court papers are kept during the progress of a cause, and the custom by which they are frequently taken from the clerk's office by the attorneys and other parties interested. But, however this may be, it is well settled that in collateral proceedings such a decision is conclusive of the jurisdiction of the court. Whether the court had the proper evidence before it on which to base such a decision cannot be inquired into collaterally, for that would be a question of error or no error, which manifestly can be entertained only in a court sitting to review the proceedings. *Harris* v. *Ransom*, 24 Miss. 504 ; *Cannon* v. *Cooper*, 39 Miss. 784. This rule is absolutely essential, in order that faith and credit may be accorded by the community to the decrees and judgments of courts of record; and that parties acting in obedience to them, or acquiring rights under them, may have the confidence and repose flowing from a conviction that the solemn judgments and decisions of the higher courts, so long as they remain unreversed, will not be disregarded. It is attempted to weaken the force of this position by the suggestion that no man should be bound by a judgment of which he had no notice, and therefore no opportunity of resisting ; and that if he were denied the opportunity of showing that he had no notice, by a decison made in his absence, that would be confessedly binding him, as to that decision, without notice. But it may be replied, that all proceedings in courts of justice are based upon the confidence that the officers of the law, the clerks and sheriffs as well as the judges, will do their duty, and in all their official acts conform to truth and justice. It is this confidence that makes the return of the sheriff on the process, showing its due execution, unimpeachable after final judgment. This return is made in the absence of the party served ; and he may as well complain that he should not be bound by a return thus made by an officer in his absence, as of a judicial decision as to the same matter.

It is next urged against the proceedings in the suit to enforce the vendor's lien, that the bill was against the plaintiffs below, solely in their character as heirs of Crosby S. Skidmore, and that no notice was taken of the deed for seven hundred and thirty acres, made by said Skidmore to James Simmons, their father, and that their rights under that deed were not affected by the decree and sale in that suit. It has been shown that the plaintiffs were parties to that proceeding, and that they were represented by a guardian *ad litem*. If in fact they had rights as heirs of their father, which they could have asserted in opposition to the enforcement of the vendor's lien, it should have been asserted in that proceeding. They were as much bound to set up their rights, if they had any, under that deed, as they were to assert payment, or any other affirmative defence. They were before the court, were bound by its decree, which gave them no right under said deed, and they are concluded by it in all collateral proceedings. That they were infants and incapable of making their defence makes no difference in this respect. Beyond the rights, reserved to them by law, of proceeding to have decrees reviewed within one year after they attain their majority, and their exemption from the operation of the Statute of Limitations, barring writs of error and appeals, they have no further claims to impeach decrees rendered against them than are accorded to adults. If their guardians have not made proper defences it is their misfortune. Society undertakes, in view of the incapacity of minors to manage their own affairs, to furnish them suitable guardians to protect their interests ; but it does not undertake to guarantee in them perfection and infallibility.

It is next urged that the decree in the partition suit is void, because the summons was served on the plaintiffs, who were then infants, by service on them alone, the record showing that they had no guardian or father, but not showing that they had no mother. In this record is the recital, in the order appointing the guardian *ad litem*, that it appeared to the court that process had been returned duly served on the infants. If in fact there was no mother then living, and it so appeared in any part of the record, the service on the infants would be in all respects

exactly regular and proper. It is not necessary that the sheriff's return should say any thing about the non-existence of a guardian or parents. From the impossibility of the sheriff determining, as a matter of fact, the non-existence of these persons outside of the limits of his own country, it would seem to be the better rule to hold that their non-existence should be shown in some other way; and *it would seem to be wholly immaterial whether this was shown before or after the return of service on the infants.* The statute requires service on the father, mother, or guardian, if there be such, and whenever their non-existence is shown anywhere in the record, as a fact, the service is regular if made on the infants alone. The adjudication in this record, that the return of service was legal, must have been made on the proof then presented to the court, that there was no guardian, father, or mother; and it will not be denied, that if the order had recited that such proof was made, the service would have been regular in all respects, and unimpeachable even in a direct proceeding. In a direct proceeding, however, as has frequently been held by this court, this recital is insufficient to show affirmatively the non-existence of the father, mother, or guardian. *Crawford* v. *Redus*, 54 Miss. 700 ; *Billups* v. *Brander*, 56 Miss. 495. But when considered in a collateral proceeding there is no doubt, for the reasons given in relation to the service of process in the proceeding to enforce the vendor's lien, that the adjudication of the court on this subject is conclusive. It is a significant fact, as showing the extremely technical nature of this objection, that one of the plaintiffs in the court below, when introduced as a witness in his own behalf and to establish his heirship, stated that both his father and mother died long before the commencement of either of the suits, and the record itself shows that they had no guardian.

It is next insisted that the decree of the Chancery Court in the partition proceedings is void for want of jurisdiction over the subject-matter. It is argued with great zeal and ability, that, as there were minors interested in the land, the only jurisdiction to order a sale was in the Court of Probate, and we are asked to review and overrule the decision of this court in *Wilson* v. *Duncan*, 44 Miss. 642, in which the jurisdiction

of the Chancery Court in a like case was upheld. We have considered all that has been urged against that decision, and we are satisfied it is correct, and will therefore follow it.

It is also urged against both decrees that the plaintiffs were infants, and incapable of becoming purchasers at the sale made under the decree enforcing the vendor's lien; and that they lost by that sale none of their rights as heirs of Crosby S. Skidmore and of their father, and acquired none, and that as the partition proceedings were based on the validity of the title under that purchase, and made no mention of their rights as heirs as above mentioned, no title was conveyed to the purchaser under the decree for partition. This objection is without force. A purchase by an infant is not void, but only voidable. It is good till disaffirmed by him. If they had disaffirmed the act of the executor of Samuel B. Simmons and the adult co-heirs, in embracing them as co-grantees in the deed to the extent of their interest in the purchase-money, it would not have made the sale void, but would only have given them a right to one-eighth of the money, instead of to that proportion of the land. The partition proceeding being based on the fact that they were grantees in that deed, and had the interest in the land which that deed gave, and no more, and they having been, as shown, parties to that proceeding, they cannot now defeat the title of the purchaser by alleging that they had no such title.

It is finally urged, in opposition to the title of the defendant, that the deed of the commissioner, being to John G. Cocks and his heirs, was not delivered till after the death of John G. Cocks; and hence, there being no valid delivery, there was in fact no deed. The facts as they appear in the record, so far as they relate to this last objection, are as follows: —

In August, 1870, a decree was rendered in the partition suit, ordering a sale of the land for cash, and appointing J. M. Stigler a commissioner to make the sale; and he was " directed to execute a deed to the purchaser of said land, and report his proceedings under this decree to a subsequent term of the court." On Nov. 21, 1870, Stigler made a sale as directed, and John G. Cocks became the purchaser at the price of $18,177. On the same day a formal deed to Cocks

was drawn up, and then signed and sealed by Stigler, who also on that day acknowledged, before a competent officer, that he had signed, sealed, and delivered the deed. At the next term of the court, in February, 1871, he made a report to the court, in which he stated that he had made the sale in pursuance of the decree, and that John G. Cocks was the purchaser, and that he (the commissioner), "as in said decree directed, executed to said John G. Cocks a deed for the land so purchased by him." At the same term of the court an order was made, which stated that it was " ordered, adjudged, and decreed by the court, that said sale, and *said report thereof* be, and the same are hereby, in all things confirmed."

The defendant below produced the deed, and offered it in evidence to support his title. The plaintiffs, to disprove its delivery, read in evidence to the judge the deposition of said Stigler, in which he stated that he was enjoined from making the sale and paying over the money to be derived from it, by one Holmes, an alleged creditor of said Samuel B. Simmons; that no money was, in fact, paid on the day of sale, but afterwards, in 1872, John G. Cocks paid, on the order of the commissioner, to the heirs of said Samuel B. Simmons, $8,172, including $1,362 to the then guardian of the plaintiffs; that he never delivered the deed to John G. Cocks, but kept it for him, and as security for the $10,000 remaining unpaid; that John G. Cocks died in 1873, and the defendant finally, in 1877, paying the whole of the purchase-money, he delivered the deed to him; that the injunction suit also prevented the payment of the $10,000 by Cocks; that there was an agreement between the counsel in the chancery suit in which the sale was ordered, and the counsel in the injunction suit, that he, the commissioner, should make the deed to Cocks, and hold it till the $10,000 was paid. Stigler also stated that he was enjoined from paying over the whole amount of Cocks' bid, and that he would not have delivered the deed to Cocks without payment of the $10,000, and that while he had the deed it was under his control.

When this deposition was read in connection with the records in the two chancery proceedings above discussed, the court refused to allow the case to go to the jury, adjudging, as

we understand the record, that the deed had never been validly delivered. In this the court erred, not only in assuming to determine the question raised as to the delivery, instead of leaving it to the jury, but also in deciding erroneously that there had been no delivery. Under the circumstances, it was not competent for the plaintiffs to deny that the deed was duly delivered to John G. Cocks, and we also think that, apart from any question of estoppel, the evidence would have fully warranted the jury in finding that the deed was duly delivered.

It will be remembered that Stigler, the commissioner, was not the real vendor of the land. In such sales the court is the real vendor, and employs a commissioner merely as its instrument in consummating the transaction. The commissioner is less than an agent, for his acts are not binding, until they have received the sanction of the court, after they have been performed. When he acts, he executes the will of the court, not his own. He is the body, and the court the animating spirit which puts him in motion and directs and gives validity to his acts. He has no rights in the estate ; and parts with none by his deed. He is appointed by the court to execute its will and effectuate its purposes, and may be discarded at any stage in the progress of the transaction, and another employed in his stead. In this case, he was directed by the decree of the court to make a deed to the purchaser, — not merely to sign and seal a deed, but to make a perfect and operative deed. He did sign and seal a deed, and acknowledged solemnly before a proper officer, in accordance with law and the decree of the court, that he had also delivered it. He then reported to the court, in discharge of a high duty to make a truthful statement of how he had executed the decree, that he had fully executed the deed according to its directions ; and the court confirmed his acts, as thus reported, and adjudged the deed to have been fully executed, and its own and the commissioner's duties fully discharged. The court, which was the real vendor, and whose will alone was of any operative force in the transaction, thus assented in the most solemn form to the full execution of the deed, including its delivery, and adjudged that the essential act for the consummation of the sale had been per-

formed. When this was done, the commission given by the court to Stigler was at an end. He had no power to do any further act; and as to what had been adjudged by the court to have been rightly and solemnly done, he had no power or control. His powers, whatever they may have been, were derived from the court for the purpose of executing its will, and he could not undo what had been done; nor, after the court had adjudged that his work was fully completed to its satisfaction, had he any revisory power to correct or perfect it. Henceforth he was *functus officio*, and stood in the relation of a stranger to the deed, with no power to retain it except as a mere depositary and as a private person. It was to all intents and purposes delivered. Actual manual tradition of the deed is not necessary to a delivery, even when the grantor is real and not nominal. A delivery is effected when by words or actions an intention is indicated that the deed shall be considered as fully executed. 4 Kent Com. 455, 456, note. Here the only party who had any will in the premises, or who had a right to give or withhold a deed, had not only manifested in the most solemn form the intention that the deed should be considered as fully executed, but had given his assent to the fact that delivery had actually been made; and the other party, who had been charged with the duty of delivering it, had also acknowledged in the most solemn form that he had actually delivered it, and had so reported to the court. The test as to whether a deed has been sufficiently delivered, is the right of the grantee to have that specific deed put into his actual possession by whomsoever may hold it, and not merely to have a deed made in pursuance of a pre-existing equity. Whenever he has this right to a specific deed already drawn up, the deed has been effectually delivered and the title passed. In this case, if Stigler had refused to Cocks the possession of the deed, the court would have ordered its surrender. And if Stigler had died with it in his possession, a like order would have been made on his executor, or other person holding it.

But whether the proof showed a delivery or not, the plaintiffs were estopped to deny that there had been a valid delivery. The record of the court, as we have seen, showed that the deed had been delivered. This record was made at the in-

stance and on the report of the commissioner, in the discharge of a duty which had been imposed upon him by the court. It was the duty of the court to cause a deed to be made to the purchaser. This record, thus made, is an estoppel on the parties in that suit to deny that it is untrue, and that the purchaser failed to get the estate for an alleged non-delivery of the deed by the commissioner, where there is no suggestion of fraud, or that the substantial rights and interests of any party would be violated by holding the deed delivered. In this case the purchaser is in no default, and is entitled to the estate. Where all has been done in good faith that the purchaser was required to do ; where it is certain that he is equitably entitled to the estate, and the objection is merely that he has failed to get the naked legal title, on account of an alleged non-delivery of the deed, we are bound to hold that the recitals and decrees in the record above set out import absolute verity, and estop the parties from denying the delivery.

The injunction proceedings referred to in the deposition of Stigler are without force to overturn the above conclusion. If the injunction were violated by a sale, no one can complain but the complainant in that suit. He makes no complaint here. Moreover, the decree for the sale, and the order confirming it, seem to have been made by the same court in which the injunction was pending, and these orders may be treated as a dissolution of the injunction, at least to the extent of allowing a valid sale to be made. Nor can the agreement of counsel, testified to by the witness, have any effect against the conclusion we have reached. This agreement seems to have been made with the view of facilitating the injunction proceedings by requiring the purchaser to keep in his hands enough money to meet the claims of the complainant in that suit. It looked, therefore, to validating the sale and securing the rights of the purchaser under it, and not to destroying them. That it was agreed that the commissioner should retain the deed till the purchase-money left in the hands of the purchaser should be paid over, seems to consist more with the idea that the retention was a deposit as a security for the purchase-money, than that it was a denial of any validity to the deed whatever, during the time of its retention. But, however this

may be, the agreement was a mere private arrangement made by counsel, without the sanction of the court, and looked solely to the rights of the complainant in the injunction suit, and did not contemplate the undoing of what had solemnly been decreed by the court.

The court below, in opposition to the views herein expressed, excluded from the jury both of the chancery records before referred to, and also the deed of the commissioner to Cocks. For these errors we reverse the judgment, grant a new trial to be proceeded with according to the principles of this opinion, and remand the cause. The assignments of error, based on the rulings of the court in the matter of rent and improvements, do not seem to require notice, under the view we have taken.

*Judgment reversed.*