THOMAS, Trustee, *v.* THE BROWNVILLE, FORT KEARNEY & PACIFIC RAILWAY Co. and others.

*(Circuit Court D. Nebraska.   May, 1880.)*

CONTRACT—PARTIES—RAILROAD—DIRECTORS.—A contract between a railroad and a construction company is void where any of the directors of the railroad are members of the construction company.

SAME—ESTOPPEL—RATIFICATION.—The stockholders of the railroad are not estopped by long acquiescence in such contract, nor can the same be ratified by a board of directors composed in part of members of the construction company.

SAME—EQUITABLE RELIEF—PUBLIC POLICY.—Public policy will not permit a court to grant equitable relief under such contract, where it further appeared, upon the face of the contract, that each director of the railroad received a pecuniary consideration for entering into the contract.

In Equity.   Mortgage foreclosure.

*J. M. Woolworth* and *J. R. Webster,* for complainant.

*J. H. Broady,* for defendants.

McCRARY, C. J.   The defendant railway company is a corporation organized under the laws of Nebraska, and had authority to construct a railroad from Brownville westward to the west line of Gage county, Nebraska.   It possessed certain property and assets which, on the eighteenth day of September, 1871, according to the report of the master herein, amounted to $117,042.56.   Said company having commenced the construction of said railroad, and being unable to complete it without securing capital from other parties, on the said eighteenth day of September, 1871, entered into a contract with Benjamin E. Smith and William Dennison, of Ohio, and J. N. Converse, of Indiana, and such others as might thereafter be associated with them, whereby the latter, for certain considerations named, agreed to complete the construction of the the road over and along the route above named.

The mortgage sued on in this case was executed to Joseph T. Thomas, trustee, to secure the payment of certain bonds issued under the said construction contract for the purpose of building the road.   The validity of this contract is assailed upon the ground that subsequently to its execution, and before any work was done under it, two of the stockholders and directors

18*

rectors of the defendant corporation became interested with Smith, Dennison and Converse as parties thereto, so that two of the five contractors were parties to the contract on both sides. The construction company thus organized went on under the contract for several years, expending large sums of money in the construction of the road, and now claims a large balance as due to it on said contract, for which it holds bonds secured by the mortgage sued on. It seeks to recover judgment and a foreclosure of said mortgage. The validity of the mortgage, and of the bonds to secure which it was given, depends upon the validity of the construction contract, which is the foundation upon which alone they must be supported.

Upon consideration of the proofs in the case, the master's report, and the law, I have reached the following conclusions:

1. That the admission into the construction company, under the construction contract, of two officers of the railroad company was unlawful and vitiated the contract. It matters not whether the contract was entered into with the understanding that the two railroad directors were to be admitted or not, their presence as parties on both sides during the progress of the work, and when payments and settlements were to be made under the contract, is enough. *Wardell* v. *R. Co.* 4 Dillon, 33; *R. Co.* v. *Poor,* 59 Me. 270.

2. It is insisted that there has been such acquiescence on the part of the stockholders of the defendant company, in the matters of which they now complain, that they are estopped. It appears that the contract was openly made and reported to the board of directors of the railroad company, and by them approved, without any apparent effort at secrecy, and that the work of constructing the road was carried on by the construction company under the contract for a period of several years. It is inferred, and perhaps not without reason, from these facts that the stockholders generally were advised of the particulars of the contract, including the fact that two members of the board of directors were interested in it. It does not, however, follow in my opinion that the contract should be upheld and enforced in a court of equity as against the stockholders.

A ratification, to have this effect, must be made by a board composed of *disinterested* directors. It is not enough that such a contract has been ratified by a board composed in part of the interested directors. The least that can be required in such a case is that the directors concerned in the contract shall resign, and allow their places to be filled by persons who can, without bias, represent the interests of the corporation, and particularly of the individual stockholders.

In the case of *R. Co.* v. *Dewey*, 14 Mich. 477, the supreme court of that state had occasion to comment upon a contract made with a corporation by a company in which two of the directors were interested, and in the course of the opinion grave doubts were expressed by the court as to whether a ratification by the board, even with full knowledge of all the facts, could render the contract valid while the two interested directors remained influential members of the board, especially if they took part in such ratification.

The court was evidently strongly inclined to the opinion that such a ratification, even if made upon a full disclosure, would amount to nothing. The vice of the original contract would, in such a case, enter into the act of ratification—the latter, like the former, being a transaction in part by directors with themselves. Besides, where shall we draw the lines? If the presence of two interested directors in the board at the time of ratification does not vitiate the act, would the presence of a larger number of such directors have that effect, and if so, what number?

3. It remains to be determined whether the plaintiff can have relief to the extent that the railroad company has been benefited by the contract. This depends upon the question whether the contract was tainted with vice or immorality. *Creath* v. *Sims*, 5 How. 204. If it were possible to do so, consistently with well-settled principles of great public importance, I should be inclined to grant this relief, since, as between the parties, it is equitable that the corporation should account for whatever of value it has received from the construction company. But if there is in the contract the element of moral turpitude which the law denounces so strongly,

I am bound to hold that the parties must be left, without relief from the courts, where they have placed themselves.

The fact that two of the directors of the corporation were admitted to an interest in the contract, bad as that is in itself, is not all, nor the worst part of the transaction. On the same day that the construction contract was executed, and as a part of the transaction, the members of the construction company executed the following agreement with the members of the board of directors and certain other stockholders.

"In consideration of the execution and delivery of a certain contract to construct the Brownville, Fort Kearney & Pacific Railroad of Nebraska, wherein said railroad company agrees to turn over to us and our associates all of the property owned, and assets, subscriptions, etc., of said company, we, therefore, do promise and agree and bind ourselves to relieve the following, named subscribers to the capital stock of said company from the payment of any further amounts or assessments upon the stock which they may have subscribed thereto, by our paying out said stock, and receiving same assigned by them to us, viz.: Henry M. Atkinson, John L. Carson, R. W. Furnas, F. A. Tisdell, James L. McGee, C. F. Stewart, A. J. Ritter, H. C. Lett, T. W. Bedford, T. W. Tipton, John McPherson, and $500 on the stock of Evan Worthing, in all not to exceed $16,500 of the $41,-000 of individual subscriptions to said company.

"Witness our hands, this eigthteenth day of September, 1871, at the the city of Columbus, state of Ohio.

"Witness: G. MOODIE.  B. E. SMITH,
[U. S. Int. Rev. Stamp, 5c.]  "W. DENNISON,
 "J. N. CONVERSE."

The list of stockholders in this agreement includes all the directors and five others. I am unable to construe this contract as anything else than a promise to pay each member of the board individually a consideration for his action as a director in voting for and executing the construction contract. The members of the board were stockholders, and as such liable to assessments. The construction company, "in con-

sideration of the execution and delivery of" the construction contract, undertook to relieve the directors "from the payment of any further amounts or assessments upon the stock which they may have subscribed," etc.

The construction company agreed to "pay out" the stock of each director. The transaction then was as follows: The directors executed a contract by which they transferred to the construction company substantially all the property of the corporation and employed them to construct the road. In order to secure this contract the construction company took two of the directors into their firm, giving them an interest in the contract, and agreed to pay each of the other directors a pecuniary consideration for making the contract. There was, therefore, not a single member of the board who was not personally interested in favor of making the contract and in hostility to the interests of the stockholders for whom they were trustees, and whose rights they were bound to protect.

It may be that this agreement was not much considered at the time; that the directors and others interested were anxious to induce the construction company to take hold of the enterprise upon any terms, the company being unable to go on with the work. All this is doubtless true, but it does not change the character of the written contract with which we have now to deal.

I am clearly of the opinion that the contract is so clearly illegal, against public policy, and vicious, that a court of equity cannot enforce it or grant any relief upon it. The bill must, therefore, be dismissed.

*Marshall* v. *R. Co.* 16 How. 314; *Bank of the United States* v. *Owens,* 2 Peters, 539; 2 Redfield on Railways, 576, 584; Pomeroy on Contracts and Specific Performances, §§ 284, 285, 286; *Wight* v. *Rindskoff,* 43 Wis. 344; *McWilliams* v. *Phillips,* 57 Miss. 196; *Guernsey* v. *Cook,* 120 Mass. 501; *Letter* v. *Alvey,* 15 Kan. 157