DANIEL McIlvoy *v.* T. B. ALSOP, Admr., et al.

1. PARTIES IN CHANCERY — WHO NECESSARY. — Those who have the beneficial interest in lands, the subject-matter of a suit in equity, are necessary parties.

2. SERVICE OF SUMMONS — MINORS, HOW SERVED IN CERTAIN CASES. — Where a summons issued for minors whose mother was included in the summons as a defendant, and the return of service showed that it was executed by delivering a true copy of the summons to each of the defendants named in it : *Held,* This was sufficient, and it was not necessary that a copy of the summons should

have been handed to the mother, in addition to that already delivered to her on her own account. The delivery of a second copy to her would be an idle ceremony.

3. Minor — decree against — proof necessary.— It is error to render a decree against minors, except upon proof of the material allegations of the bill.

4. Case under consideration. — The record in this case was reviewed, and the conclusion reached that there was not sufficient proof of the statements of the bill to warrant the decree against the minors, and for that reason it is reversed.

5. Ancillary administration — assets in Mississippi — who entitled to collect — case in hand. — A person in Kentucky held a note on one in Mississippi, secured by a lien on land in this state, and, after making his will, died in Kentucky. The will was probated in both states, and letters granted upon it. The note mentioned fell into the hands of the personal representative in Kentucky, who retained it, and insisted on his right to collect it: *Held,* That the note was assets here, and the Mississippi administrator was entitled to collect it; and the fact that the note (the mere evidence of the debt) was in the hands of the other in Kentucky, was no bar to the right of the Mississippi administrator to collect it, and a court of chancery will decree payment to him in such case, taking due precaution for the benefit of those responsible for its payment, against the risk and danger of trouble and costs in making defense against an assignee.

Appeal from the chancery court of Yazoo county. Campbell, J.

The summons was for (among others) Mary A. Exum and her children, Kinchen W. Exum, Robert D. Exum, and E. W. Exum, Lucy O. Exum and her children, Glenn Exum, Claud K. Exum, and Benjamin Exum, and the return of service was in these words, viz. : "Executed Nov. 16, 1866, by delivering true copies of the within process to" (Here follows the names of all the defendants, as named in the summons).

There was no evidence to sustain the allegations of the bill. The note mentioned was not exhibited in evidence.

The statements of the bill are set forth in the opinion of the court.

There were twenty errors assigned by appellants and they were argued *seriatim* in a brief too long for insertion and too elaborate for abridgment, except as to the questions on which the opinion of the court was delivered, and on these the brief is inserted.

*Hudson & Nye,* for appellant.

As to the third cause we cite 40 Miss. 500 ; ib. 585 ; 37 ib. 438 ; Ingersoll . v. Ingersoll, 42 Miss. ; Rev. Code, p. 488, art. 64. The process does not appear to have been served on the father, mother or guardian for the minors, nor does the return show affirmatively that they had no father or mother or guardian in this state, as required, in Ingersoll v. Ingersoll, nor is the service otherwise good in law. It does not show that process was served on the minors personally, and a true copy of the writ to be served, was delivered to them, but says, served personally by delivering a copy. Delivery of a true copy is only part of the personal service, and is not of itself and alone a sufficient personal service. This return shows how service was made, to wit, "by delivering a true copy." The minor could waive nothing. The law requires service of the writ, with the seal of the court, and a true copy to be delivered in addition thereto, and the mere delivery of a copy of the writ is no service, unless the writ, of which it is a copy, is served, and that it was served must affirmatively appear by the return, as also that a copy was delivered. Both the service of the writ and the delivery of the copy must concur and appear, and does not concur or appear by a return, served personally, by delivering a copy of the writ. The officer seems to think that the mere delivering a copy of the writ, without showing, reading or exhibiting the writ, was sufficient personal service. How can a party waive a copy, as provided for by law, unless he is served with the writ itself? A copy of the writ is not the writ, nor is the handing such copy a service of the writ, but a thing to be done after service of the writ, and necessary to complete and make valid such service unless waived, and minors cannot waive. The return is bad for the further reason, that it does not appear that the mother, father or guardian was served by the officer for the minor, or that none existed, and the fact that the mother was a co-defendant with her minor children, and was served to answer for herself, by the same insufficient

service, cannot aid the service upon the minors, nor indeed can the allegations of the bill that she was the mother or the minor had no father or guardian, nor the answer of a co-defendant or even of the minor, be taken as true against the minor.  1 Hoffm. Ch. Pr. 233 ; 1 Barb. Ch. Pr. 150 ; Tyler on Inf. and Cov. 172, 173 ; Story's Eq. Pl. 668, § 871; 3 Johns. Ch. 367 ; 8 Ohio, 377 ; McLean, 120, 134 ; 3 Dana, 35 ; 2 Rand. 409 ; 4 Paige, 115, 119 ; 6 ib. 353.

As to fourth cause, we cite Ingersoll et al. v. Ingersoll et al., 42 Miss. ; 1 Hoff. Ch. Pr. 233 ; 1 Barb. Ch. Pr. 150 ; Tyler on Inf. and Cov. 172, 173 ; Story's Eq. Pl. 668, § 871 ; 3 Johns. Ch. 367 ; 8 Ohio, 377 ; 1 McLean, 120, 134 ; 3 Dana, 35 ; 2 Rand. 409 ; 4 Paige, 115, 119 ; 6 ib. 353.  There was no proof whatever in the case.  The answer of the guardian *ad litem* admitted nothing, could admit nothing, but demanded strict proof of every allegation of the bill.  This the law desires and demands for the minor, as the above authorities clearly establish, nor can the answer of a co-defendant be taken for evidence for or against a minor or even an adult.  There was no note filed or read or produced as evidence, and by complainant's bill, if there was any note, it was outstanding, not in the hands of complainant or under his control but in the hands of other parties.  There was no proof that the note belonged to complainant or existed any where, nor was there a single word of proof to support or sustain, before the court or commissioner, a solitary allegation of the bill as against the minors.  Nor can a decree, *pro confesso* or final, be taken against an infant or minor without proof of every material allegation of the bill, indebtedness, etc.  See authorities above cited.

As to tenth cause we think that the averments of the bill, setting forth the late will of the late Jesse Alsop, deceased ; the legacies and legatees under the will ; the failure to make the legatees (Mary and her children), Redding and others parties to the suit ; and failure to make all creditors of Exum, parties to said bill, all being alike secured by the same deed and fund ; and the failure to show and aver facts

showing that McIlvoy had no right to hold or dispose of the notes of Exum, or they were not disposed of in Kentucky for the purposes of the will, or that McIlvoy did not have the legal right to administer said notes in Mississippi, under article 131, Rev. Code, p. 457, nor that there was no Kentucky administrator entitled thereto, or that his was not an ancillary administration. The bill should have made such parties, and such averments as to exclude all others from interest in the fund and property and right to hold, administer or collect said notes. If McIlvoy, the Kentucky administrator, *cum testamento annexo*, had said notes, and had complied with article 131, Code, 457, as was true, and the Mississippi administration was ancillary, as it was, then complainant had no right to sue, or to the fund. He should have stated in his bill the facts and truth in relation to said notes, their custody and the contest, and by them left the court to determine the right to their custody and collection in this case as against the Kentucky administrator. If the Kentucky administrator had the notes and was qualified under article 131, Code, 457, he could collect, and if the complainant collects, he must pay to the Kentucky administrator. There were no debts of the estate to pay, no legatee in Mississippi, and the late Jesse Alsop died testate. This court has decided that article 110, Rev. Code, p. 452, applies only where the decedent died intestate. 40 Miss. 172. And this court has decided that the law of the domicile of the testator is to determine the validity of the will and devises of the testator. 36 Miss. 150.

The bill in this case should have stated facts, not assertions, that would enable the court to say in whom was the legal title to the notes, whether in the complainant or the party in possession of the notes, the latter being the domiciliary administrator, and charged with the settlement of legacies, also should have alleged and shown by averments, that the notes in this case were exclusively entitled to the appropriation of the whole general fund, provided by the debtor for the payment of his debts generally, and of

which the debts here sued for constituted only a part, or may have done so, so as to have excluded the rights of the holder of the notes and the participation of any other creditor, if any, in the general security fund created by exhibit B. in December, 1856. This security and this fund is not specific nor for any particular person, but general and for all creditors alike, yet no other creditor is made a party, nor is any averment made that there is no other creditor, but complainant seeks by his bill and obtains by his decree an appropriation of the whole assets and estate (insolvent) to his demand exclusively. See 1 Story's Eq. Jur. (6th ed.), §§ 547, 548, 549, 550 and 558–569, and notes; Story's Eq. Pl., §§ 99, 100, 103; Mitf. Eq. Pl. (by Jeremy), 166, 167; 2 Cox, 44; 2 Dick, 708; 1 Ves. 104, 131; 1 Paige, 270; 3 Atk. 572; Prec. Ch. 592; 2 Johns. Ch. 296; 1 Mont. Eq. Pl. 62.

As to domiciliary and ancillary administrations, see 1 Story's Eq. Jur., §§ 583–589; Story on Confl. of Laws, (3d ed.), §§ 514, 518, 522.

The complainant not having the notes in this case is not presumed in law to be entitled thereto, and they being outstanding and in the possession of others, are presumed in law to be rightfully so, and the bill does not state such facts as to exclude in the mind of the court such conclusion, or negative every form and means by which the custodian of the notes might properly have and retain them for proper and legitimate purposes.

The bill was demurrable and the demurrers should have been sustained because it was a bill to enforce an alleged specific and exclusive lien on certain specific property for a certain specific amount, and for a lien for an indefinite amount on a general and indefinite estate, and to prohibit a third party holding the notes, from collecting the same, and to defeat the purposes of the will, the requirements of which it was his duty to carry out.

As to the twelfth cause assigned, the bill should show the amount specifically given and due for certain specific lands, sold and bought, and should show the specific lands on

which a vendor's lien rested and was to be enforced, as the first and prior specific right and lien, and to what amount, and proceed to exhaust such specific property and lien for such sums before invading any other funds or general assets in which all creditors are interested. This was not done, yet a decree for the whole indebtedness is made, and the special and general fund blended and indiscriminately subjected to pay the whole debt. This was clearly error, both in framing the bill and in the decree, as shown by the authorities as cited in the tenth cause of error. Indeed, it may be a serious question, and is presented to the court whether or not the complainant, in accepting the security offered and given by deed of December 10, 1856, and made exhibit A. to the bill, did not lose his specific lien and security upon the lands sold for the payment of the purchase-money of the land yet due. There was no lien retained in the deed from Alsop to Exum, and, as a general rule, if the vendor accepts other security for the payment of the land debt, the vendor's lien is discharged or he has no lien on the land. 6 Ves. 752; 2 Vern. 281; 15 Ves. 329, 342. 13 Smedes & Marsh. 346, is decisive. 6 Ves. Jr. 475; 2 Story's Eq. Jur. (6th ed.), §§ 1224–1229 and notes. At all events, it is, if a lien or equitable mortgage, a prior, specific and exclusive one, and should be first exhausted, in case of insolvent estates, and before proceeding to subject general assets for the payment of less favored creditors.

As to the fifteenth cause assigned, we cite Rev. Code, 457, art. 131. As the domiciliary administrator, it was his right to proceed and hold custody of the notes under this statute, the notes came lawfully to his possession as the home administrator. If they had any *situs*, it was with the domicile of the testator and passed to the home administrator.

*Miles & Epperson*, for appellees,

Contended that the return of service of the summons was good, and that the allegation in the bill, that the note was in the hands of McIlvoy, in Kentucky, and not procurable

by appellees, relieved against the necessity of exhibiting or making proof of it, and that the decree was in all respects correct, and should be affirmed.

SIMRALL, J. :

This suit embraces two chancery causes, brought by Thomas B. Alsop, administrator *de bonis non, cum testamento annexo,* of Jesse Alsop, deceased, against the heirs and legal representatives of Kinchen Exum, deceased, and Edward Exum, deceased, and Daniel McIlvoy, which were consolidated and conducted to final decision as one cause.

The first bill proceeds for the foreclosure of a vendor's lien on certain lands sold and conveyed by the testator, Jesse Alsop, to Kinchen Exum, for the price of $12,400, evidenced by promissory note, payable ten years after date, with eight per cent interest, payable annually.

The second bill claims, in addition to the vendor's lien, a trust or charge created by Kinchen Exum, on the lands purchased from Alsop, and also upon other lands, by a deed executed by the said Kinchen to Edward Exum, among other trusts and uses, to secure the indebtedness of the said Kinchen to Jesse Alsop. Without further analysis of this conveyance, it may suffice to say that, while providing for this indebtedness, the grantor retains, for the use of himself and wife and children, an interest in the property, and creates a like use and benefit for Edward Exum, his wife and children, and, after the death of said Kinchen and Edward, devolves the whole beneficial interest upon their respective widows and children. The widows and children of these parties, having the beneficial intersts in the lands, are necessary parties defendant. The bills allege that Edward Exum left no estate, and, therefore, no legal representative was ever appointed by the probate court. They further charge that Jesse Alsop, at the time of his death, was domiciled in the state of Kentucky, where he died ; that he made a last will and testament, which has been probated in Kentucky, and in Yazoo county in this

state, by which, among other things, he made certain persons, his slaves, his legatees, but these persons were emancipated by the said Jesse in fraud of the laws of this state, and the bequests to them were void for want of capacity in them to take and hold property. (At the last term we decided a case involving the rights of these legatees, under this will, to which we make reference.)*  The bills also allege that Daniel McIlvoy is in Kentucky, the administrator *de bonis non*, with the will annexed of the testator, he succeeding one Redding, the executor who has deceased.

They further allege that said McIlvoy has possession of the note of $17,000, due the estate of Jesse Alsop, and which includes the $12,400, the price of the land sold to Kinchen Exum, the residue of the amount being for slaves bought by him from the testator, which note he refuses to deliver to the complainant, the legal representative of Jesse Alsop, deceased, in this state.  They further allege that McIlvoy claims some sort of interest in the estate of Jesse Alsop, by purchase from the legatees, which was made for a very trifling consideration, from motives of speculation.

The decree was for a sale of lands to pay the indebtedness of the estate of Kinchen Exum, reported by the commissioner as amounting to thirty-four thousand and odd dollars.  From which decree the case is brought to this court.  On notification, the co-defendants of McIlvoy came in and united in the appeal.

It is assigned for error that there has not been legal service of process on the minors, the children of Kinchen and Edward Exum.

The fault is said to be that the sheriff did not serve the writ by copy on the "mother," or "guardian," as required by art 64, Code.  The averment of the bills is, that there was no guardian, and the only surviving parents were the mothers.  Both the mothers were defendants, and were included in the summons with the minors.  The return is,

* Berry, adm'r, v. Alsop, adm'r, *supra*, 1.

that the writ was executed on the persons named and copy given to each; a copy was given then to the "mother" and to each of the minors. It would have been an idle ceremony, to have given the mother "two copies." The purpose of the statute has been met. The guardian *ad litem* put in for the minors the usual formal answer.

The settled doctrine of the equity courts is, that such answer (inasmuch as there can be no *pro confesso* against an infant) formally and technically brings to the notice of the court the interests of the infants in the litigation, and submits them to its protection. As they cannot confess or bind themselves by a waiver of right, a decree cannot be made against them except upon proof of the material statements of the bill. Ingersoll v. Ingersoll, 42 Miss.; Winston & Co. v. McLendon, 43 ib. 257.

Submitting their rights to this test, and it is manifest that the decree is erroneous. The bill alleges that payment for land sold by the testator to Kinchen Exum was postponed for ten years, the purchaser giving his note therefor. The deed which was made an exhibit with the bill recites that the money was paid down; as against the infants, it was necessary to overcome this recital by proof. This deed was all the evidence of the sale of the land and its price, and was *prima facie* evidence that there was no debt due for it, and of course no lien.

The admissions made in the answer of the administrators of Kinchen Exum, that the averments of the bill on this point are true, do not conclude these infants.

But the bill states that Kinchen Exum made his note to Jesse Alsop for $17,000, embracing the price of the land and slaves bought at the same time. This note was not produced on the trial. There is no paper in the cause, signed by Kinchen Exum, acknowledging the existence of such a note, or any specific amount of indebtedness. The deed executed by him to Edward Exum does not specify the amount of his indebtedness to Jesse Alsop. It makes provision for the payment of "his indebtedness," etc.,

As against the infants, it was necessary to make proof of the amount of the indebtedness.

There can be no doubt that whatever debt (growing out of the transactions set out in the bill) may be owing from the estate of Kinchen Exum to the estate of Jesse Alsop, it constitutes a part of the assets of the latter estate in Mississippi, and rightfully belongs to the legal representative here. The debtor resided here, the property sought to be subjected to its payment is here. McIlvoy, by virtue of his appointment as administrator in Kentucky, has no character or office as such in this state; he can not sue in our courts. When Robert B. Alsop was appointed administrator, etc., the law charged him with administration of all the assets in Mississippi. This being a debt due here, it was his duty to take measures for its collection. The fact that the "evidence" of the debt was in the hands of the Kentucky administrator, did not destroy its character as Mississippi assets, nor defeat his right of recovery. It might embarrass his remedy. As to McIlvoy, the *pro confesso* against him admits the allegations of the bill on this point, that Redding, the executor, inventoried the note here, and took it with him to Kentucky, and from him, as part of the papers of the estate, it came to the possession of his successor. After the note became due, it was still in McIlvoy's possession. The protection in favor of a *bona fide* holder for value would not inure to his assignee. No better title would pass than McIlvoy had. No right would be transferred as against the superior title of the administrator here. If McIlvoy, in dereliction of his plain duty, should persist in retaining the note, we are satisfied that the administrator here may collect the debt, the chancery court taking due precautions, for the benefit of those responsible for its payment, against the risk and danger of trouble and costs in making a defense against an assignee.

Decree reversed, and cause remanded for further proceedings in accordance with this opinion.