TANSEY GIBSON ET AL. *v.* CHARLES C. CURRIER ET AL.

1. PROCESS.    *Service.    Infants.    Code* 1880, § 1530.    *Code* 1892, § 3430.

Under Code 1880, § 1530 (Code 1892, § 3430), providing that process on an infant defendant shall be served on him personally and upon his father or mother or guardian, if he have any in this state, a decree against an infant is absolutely void where the record fails to show that process for him was served on his father or mother or guardian, or that he had neither in the state.

2. SAME.

Such a decree is not aided by a showing of record that the infant's mother died before the suit was begun, and that one of the defendants duly summoned was her husband at the time of her death, it not appearing that said defendant was either the father or guardian of the infant, or was summoned as such.

3. SAME. *Amendment.*

  A cross-bill, filed in such a case after a final decree had on appeal
  been adjudged void, praying that the process and the return
  thereon in the suit be amended so as to show that one of the
  defendants who was properly served was the father of the in-
  fant defendant, cannot be maintained, since service on the father
  on his own account is not a service for the infant.

4. SAME. *Statute of limitations. Property sold. Chancery court. Code*
  *1880, § 2693. Code 1892, § 2760.*

  A purchaser of property sold under a decree of the chancery court
  cannot defend upon the two years' statute of limitations, Code
  1880, § 2693, Code 1892, § 2760, so providing, unless he has made
  actual payment of the purchase money, and a subterfuge or
  sham payment will not aid him.

FROM the chancery court of Copiah county.

HON. HENRY C. CONN, Chancellor.

Mrs. Gibson and others, appellants, were complainants in the
court below; Currier and others, appellees, were defendants
there. From a decree denying the complainants a part of the
relief sought they appealed to the supreme court and the defend-
ants prosecuted a cross appeal from the decree in so far as it
granted complainants any relief whatever. The facts are fully
stated in the opinion of the court.

*R. P. Willing, Jr.,* for appellants and cross appellees.  ·

The original decree under which the lands were sold was void
as to the infants, and Mrs. Matthews acquired no titles to the
lands in controversy under the sale made by Hargraves under
said decree. While the decisions of the various courts are not
entirely harmonious a number of courts have held that a joint
judgment at law is an entirety, and that where the judgment has
been rendered against several defendants jointly it is not sus-
ceptible of division, or so apportioned as to be purged of the
errors or irregularities it may contain as to one of them while
standing good against the rest. Accordingly, it is held in a num-
ber of the states, that if the judgment is void as against one of

the defendants for want of jurisdiction over him, it will be so considered as to all of the defendants, and therefore a mere nuillty.  Black on Judgments, sec 211, and authorities cited in notes.

There are other authorities, however, which hold that although a judgment may be void as against one of the defendants for lack of jurisdiction, still it may be valid and binding on the others, or at most voidable, but not void in toto.  *Id.*, p. 211, and authorities cited in notes.

The authorities, however, are not harmonious as to a joint judgment against several defendants which is void as to one of them when it is brought before a court of review on an appeal. In general they agree that it cannot be affirmed as to one defendant and reversed as to another, but may be reversed as an entirety.  *Id.*, § 211, p. 253.  The case cited in the notes.

In the state of Missouri, it is held that a judgment void as to one defendant is void as to all, and is considered to apply to judgments only and not to decrees in equity.  6 Mo. App., 1; 28 Mo., p. 134.

In *Rule* v. *Broach,* 58 Miss., 553, this court held that a decree of the probate court for the sale of land of a decedent for division among the heirs which was void as to one of the parties was void as to all the defendants.

Judge Campbell, however, in delivering the opinion of the court took occasion to say that the case of *Hamilton* v. *Lockhart,* 41 Miss., 461, was the only case which ignored the manifest distinction between judgments at law which were joint and decrees which were not, but which the court was not in that case disposed to disturb.  It was not to be inferred, however, from the unwillingness to overrule the case cited that it would be valid in other cases besides decrees for sale in probate proceedings.

In *Moody* v. *McDuff,* 58 Miss., 751, the court reversed the decree in that case on the ground that one of the infant defendants had not been served with process, holding that the reversal of the decree did not necessitate the setting aside the *pro confesso*

as to the adult, but that would be left to the sound discretion of the chancellor in the further progress of the cause, as was held in *Ingersoll* v. *Ingersoll,* 42 Miss., 155.

Judge Chalmers delivered the opinion in that case, stated that he understood the rule in this case to be the reverse of that held in *Hamilton* v. *Lockhart,* and that each party in that forum stands upon his rights, and is affected only by errors that affect him.

Judge Cooper, in delivering the opinion upon the appeal of J. William Jones from the decree now under review states that the decree in that case being inseparable would have to be reversed as a whole, and it was so reversed.

Decrees of the chancery court are not necessarily joint. The court may render a joint decree as to all the defendants or a separate decree as to some of them. Was the decree under which the land in controversy was sold, a joint decree as to J. William Jones and Eugene H. Jones? We contend that it was, and that it was so held by Judge Cooper in reversing the case. Then, if our contention be correct as to its being a joint decree as to both of said defendant and that the decree was void as to the minor, J. William Jones, then it was void as to Eugene H. Jones, and Mrs. M. C. Matthews could acquire no title to the lands by the sale under said decree, and J. B. Jones conveyed only his interest in the land as tenant by the courtesy of C. C. Currier, the trustee. But suppose that the decree was not void as to Eugene H. Jones, but was only voidable, it was afterwards reversed by the supreme court as to Eugene H. Jones, and while the rule is that a reversal of a decree or judgment under which lands have been sold will not destroy the title of the purchaser who purchased in good faith before such reversal, yet such rule does not hold where the sale is made to the execution plaintiff or complainant in a chancery suit. Mrs. Matthews was the complainant in the suit under which the decree was rendered and under which the sale was made, and she bid off the land for something over $200.00, which was not paid by her nor credited on the decree, and the rule only holds good as to other parties who have purchased it

in, good faith and without notice of any glaring irregularities in the proceedings under which the sale was made. The doctrine *of caveat emptor* applies to a purchaser under a decree of a chancery court.

A sale under a void decree or under a decree in which the proceedings were irregular, if these irregularities are shown in the record, will not confer title on the purchaser or subsequent purchasers in case of a reversal of the decree. Am. & Eng. Ency., pp. 228, 229, and authorities cited.

The record showed that J. Willie Jones was a minor and that the court had no jurisdiction of his person, and that the decree was void as to him, and would be reversed on appeal. The attorney of Mrs. Ford at the time she purchased the lands, or at least before she paid any of the purchase money for the same, at her request, examined the title for her, and examined the proceeding under which the land was sold, and either saw or could have seen the fatal defect in the decree, and notice to him was notice to Mrs. Ford, and she was bound by what he discovered or ought to have discovered if he had pursued the inquiry as far as it should have been done.

The two year's statute of limitations under § 2760 of the code set up by the defendants as a defense will not avail. There is no possible rule for the application of that statute. Every element is wanting. Mrs. Matthews did not pay the purchase money at the time of the purchase or have it credited on her decree, and did not take possession of the land. *Jeffries* v. *Dowdle,* 61 Miss., 504.

There is no room for either an estoppel nor subrogation under the facts of this case. Mrs. Ford purchased a life estate under the impression that she was purchasing the fee simple. That impression arose in the face of the record showing to the contrary, which record she had looked into through her attorney, and she was bound not only by what she saw, but what he should have seen in the record.

The defendants, Francis Smith, Caldwell & Company, took

their deed of trust after the reversal of the decree and with the opinion and mandate in the record. Besides, the original loan which was made to Mrs. Ford in 1886 was applied in payment of the notes which Mrs. Ford had executed to J. B. Jones for the lands, was made by the Scottish-American Mortgage Company, limited, and not by Francis Smith, Caldwell & Company. The title Mrs. Ford took did not fail. She simply got less than she thought she was getting. It is not a case where the purchaser got nothing. She got the life estate of J. B. Jones, which continued from the date of her purchase to the death of J. B. Jones, who died in 1899.

*Robert B. Mayes* and *J. S. Sexton,* for appellees and cross appellants.

The statute provides that the infant himself must not only be served with process but that the service for the infant shall likewise be "upon his father or mother or guardian if he have any in this state." The manifest and only purpose of this provision of the statute was to provide an extraordinary precaution in the matter of service of process upon infants, for the reason that because of their infancy they might not guard and protect their interests as their parents or guardians might be likely to do. Common sense would have indicated that the purpose of the statute in cases where the parents or guardians happened to be jointly interested with the infant and jointly named as defendants with him would have been fully met by service of the process intended for both upon each of them, as it would if there had been more than one copy of the process, and each copy had been served upon the parent or guardian for the purpose of the statute before indicated, was not to multiply the issuance of service of process but to see that the parent or guardian, as well as the infant, was duly served.

Responding to this common sense principle this court, as early as the case of *McIlvoy* v. *Alsop,* 45 Miss., decided that "if the mother be co-defendant and she and her infant child should be

summoned in one process, her relationship appearing on the face of it a return thereon showing that a copy was delivered to each will be sufficient."

A moment's reflection will show that the principle announced in this case protects the service under review and makes the same perfectly valid.    In the Alsop case, the service was held to be valid because it would have been an idle thing to have required more than one process to meet the object of the statute, and the fact that the relationship between the parties served appeared in the process only saved the necessity of proof upon that subject, or, in other words, was sufficient evidence on that subject.

Does any one suppose for a moment that if this fact had not appeared in the face of the process, but that it had been thoroughly established by proof *aliunde,* the court would have held that there was no jurisdiction not for want of proper service, but for want of a paper recital in the face of the process showing the relationship between the parties.    To so hold would lead to the following absurd results.    Though the process might erroneously state the relationship between the parties, and the service thereof be in fact defective, the court would acquire jurisdiction, whereas, if the process did not state the relationship but the service of the same was abundantly shown to be all that the law required, still the court would not obtain jurisdiction. This would be sacrificing the object of the statute and the substance of the law for a shadow.

Jurisdiction of the court over infant litigants is not so much dependent upon the form of recitals of process as it is upon the method of service, because the most defective form of process, regardless of what it might state or omit to state, served on the parent or guardian of an infant, would be more likely to evoke a consideration of his right in the premises and elicit a protection of the same than the most formal process which could be issued for him if served upon him alone.    In other words, when all the facts necessary under the statute to give jurisdiction of a minor exist, the court acquires jurisdiction of his person and its orders

are binding upon him and his property, and whenever these facts
are made to appear by clear and satisfactory evidence the order
of the court will be upheld, and it is demonstrated beyond any
possible doubt that every fact necessary to have given the chan-
cery court of Copiah county jurisdiction of J. Willie Jones, J.
W. Jones, and Joseph William Jones, as he is at various times
named and called in this record, in the cause under review ex-
isted and to hold that the order of the court, notwithstanding the
facts, was void as to him would seem to be utterly absurd.

The question is, was the sale invalid? Is the record conclu-
sive evidence of the facts showing whether or not the court had
jurisdiction, when, as in this case, the question is not raised in a
collateral proceeding but on a bill filed in the court where the
judgment was first rendered charging its invalidity. This makes
it a question of fact, and the question of the truth or falsity of
the record in the case becomes provable as any other question of
fact.

On this point the court in *Sivley* v. *Summers,* 57 Miss., 730,
says, "It is not to be tolerated, that, because the record may show
the concurrence of those facts essential to give the court juris-
diction of the party, he may not, in a proper proceeding in the
same court, and against the other parties, show its falsity."

The court below should have allowed the amendment of the
return of process originally issued for J. W. Jones so that the
record of the case should have conformed to the facts and shown
the relationship between J. W. Jones and J. B. Jones as prayed
for in the cross bill.

We know that it appears to be radical to talk about amending
the return in this case at this late day, and that all first impres-
sions are against it, but it is useless to talk about impressions
or the appearance of things if truth, right, justice and the au-
thorities are all on the same side. In the first place, let it be
remembered that nothing on earth can be made clearer than that
the service had in the cause was really all that the law required,
and if the sheriff had added to his return the following words,

"The said J. B. Jones, being the father of J. William Jones," or "The said J. William Jones being the son of J. B. Jones," there never would have been any reversal of the decree.

Let us look at this situation a little. Would such an addition have wronged anybody? Would it not have been the truth? Would it wrong anybody now? Are there any intervening rights which would suffer by letting the return speak the truth now? Is justice to be smothered and the false obtain instead of the true because a little time has elapsed? Is it too late to do justice? Are the courts so hedged about by technicalities that a shadow of technicalities is to live in preference to substantive truth?

When we come to look at the authorities we find them but one way on the subject. Let it be remembered that this is precisely the same court to which this return was made. Let it further be remembered that all parties in interest are before the court, and, with these facts in mind, let us look to the authorities.

"Leave to amend is generally a matter residing in the sound discretion of the court which is exercised with great liberality." 18 Enc. Pl. & Pr., 954.

"Ordinarily, if the amendment is sought to be made at an early date, it is done without notice, but if a long time has elapsed since the original return was made, or if the term to which the process was returnable has passed, or if new rights have intervened, notice to those interested is required." *Ib.,* 956.

There can be no claim here that there has been any laches on the part of the defendants which would justify the court in declining to allow this amendment to be made, because the application was made pending this suit, which is the first intimation that the defendants have ever had that their rights were to be affected by the defect in the return sought to be amended. "A motion to amend or vacate a return is not an action within the meaning of the statute of limitations." *Ib.,* 957. This quotation shows that the statute of limitations does not apply.

It was argued by counsel in the court below that this amend-

ment could not be made at this stage of the case after the reversal by the supreme court. It would be strange indeed if the mere matter of the reversal of the case and the remanding of the same to the lower court should make that court powerless to amend returns of service to it upon proper application therefor, and even if we had no authorities on the subject, the court would intuitively know that there is no such force in the reversal of a case which might occur for a dozen reasons. But we are not without authority on the subject. "Where a cause is remanded, the court may permit an officer to make a sufficient return upon which to pass a judgment. *Ib.,* Note 958. An officer may, by leave of court, amend his return after the expiration of his office, when it appears that the ends of justice require such an amendment, and such an amendment is not the doing of a new act by one who is not an officer, but is merely furnishing the evidence of an act done by him at the time he was in office." *Ib.,* 959.

Mrs. Barlow is the mere representative of her husband, H. H. Barlow, in this litigation, and the real title, acquired in her name, of J. W. Jones' interest in the lands in controversy is in H. H. Barlow, and not in his wife.

While K. L. Barlow appears as a complainant, it is perfectly clear from the record that H. H. Barlow is the real complainant, and that she is merely his tool, used by him, for fear that he might be estopped to insist upon the invalidity of the lien of Francis Smith, Caldwell & Company.

This being the case, every element of estoppel in pais is found in the record. H. H. Barlow knowingly and purposely deceived Francis Smith, Caldwell & Company, or rather Waldwell & Company, their successors, as to the nature of their security (if indeed it is in any wise defective), and he did this when he knew every fact which he now knows, which is calculated to throw any doubt upon the title to the property.

Caldwell & Smith relied and acted on his representations as to the nature of the security and his solicitations as to a continuance of the loan to N. E. Ford, but for which, as the cor-

respondence between Caldwell, Smith and J. H. Barlow abundantly demonstrates, they would have foreclosed their deed of trust in ample time to have gotten their money out of the property prior to the death of J. B. Jones.

These facts fill every requirement necessary to create an estoppel, and the record discloses a case where the rule should be acted upon without hesitation.

In no event can the complainants prevent a sale of the interest of the heirs of Eugene Jones in the lands in controversy.

*Calvin Perkins,* on same side.

My associates, in their very able brief, have discussed the questions involved under several headings, and I shall confine what I have to say to the proposition, that N. E. Ford obtained a perfect title to Eugene H. Jones' one-half interest in the land in controversy. The questions we are to consider are:

1. Whether the decree of sale, being void as to the infant, was likewise void as to the adults.

2. If this decree was not void as to the adults, what effect did the reversal of it have upon the rights of N. E. Ford?

As to whether or not the decree was void as to Eugene H. Jones, the decision in *Rule* v. *Broach,* 58 Miss., 552, is directly in point, where Judge Campbell most emphatically says that *Hamilton* v. *Lockhart,* 41 Miss., is the only case in which a decree void as to one has been held void as to all when attacked collaterally; and is careful to say, that it must not be inferred from the court's unwillingness to overrule *Hamilton* v. *Lockhart,* that it will follow that case in any other proceedings besides decrees for sale in probate matters.

So in *Moody* v. *McDuff, supra,* Judge Chalmers, referring to the opinion of the court in *Rule* v. *Broach,* refused, on a direct attack by appeal, to hold a chancery decree confirming a tax title, which was void as to one of the defendants (for the very same reason that the decree now under consideration was void as to J. W. Jones), to be even erroneous as to those defendants

who were before the court below, referring to the rule announced in *Hamilton* v. *Lockhart* that "we understand the chancery rule to be just the reverse, and that each party in this forum stands on his own rights, and is aggrieved only by errors that affect him."

It was N. E. Ford's privilege, upon the reversal of the decree, to have rescinded the sale because of the failure of title as to J. W. Jones' half interest in the remainder; but she elected to take a half interest for the price she had paid for a whole interest, and certainly no one can complain of this. J. W. Jones could not complain, because she took no part of his half interest, and Eugene H. Jones could not complain, because no error was committed as to him. While it is true that the record before the supreme court did not show that any part of the land had been resold to N. E. Ford, it is none the less true that the court in treating the decree as inseparable in its nature, proceeded on a general principle of justice, which exists solely for the protection of purchasers under such decrees; and it seems like a distortion to argue that a principle of equitable procedure, founded in the desire of the court to deal fairly with persons purchasing at judicial sales, should now be invoked to take from this purchaser the half loaf that is left to her.

What we are trying to establish is, that the decree was, at most, only erroneous, so far as Eugene H. Jones was concerned, and even if the case of *Moody* v. *McDuff* was not sufficient to establish that proposition, we would rely, with great confidence, upon this as a correct announcement of the law, viz., that no judgment or decree is void if the court had jurisdiction of the subject-matter and of the person, and had the power to grant the relief which was awarded. The subject-matter was the foreclosure of a vendor's lien, a common head of equity jurisdiction, the person was Eugene H. Jones who was before the court by summons duly issued and served; and the relief granted was the sale of the land for the unpaid purchase money.

The authorities are well settled, both in this state and out of

it, that if a stranger purchase at a judicial sale, or if a stranger purchases from one of the parties to a litigation who purchased at a judicial sale, and paid his money in good faith, without notice of any defects prior to an appeal, the title of such stranger is not to be affected by a subsequent reversal of the judgment or decree under which the same was made. *Doe* v. *Natchez Ins. Co.*, 8 Smed. & M., 197; *Natchez Ins. Co.* v. *Helm*, 13 Smed. & M., 182; *Davis* v. *Watson*, 54 Miss., 679.

Argued orally by *J. S. Sexton*, for appellees and cross appellants.

WHITFIELD, C. J., delivered the opinion of a majority of the court.

This is a suit by Mrs. Tansey Gibson, Lora Jones and J. B. Jones, Jr., heirs at law of E. H. Jones, deceased, and Mrs. Kate L. Barlow, against Francis Smith, Caldwell & Co. and their trustee, C. C. Currier, seeking to perpetually enjoin a sale of the lands in controversy under a trust deed given by C. W. and N. E. Ford on January 11, 1890, to secure $800 and interest; and also to have said trust deed canceled as a cloud upon the title of complainants. The facts are these:

On September 5, 1879, Mrs. Eliza Jones bought from Mrs. M. C. Matthews and husband about 2,700 acres of land in Copiah county for $3,300, secured by vendor's lien. This tract included the land now in controversy. On September 10, 1880, Eliza Jones died intestate, leaving her husband, J. B. Jones, tenant by the curtesy, and Eugene H. Jones and Willie Jones, a minor, as her children and heirs. On November 25, 1882, Mrs. M. C. Matthews filed a bill to foreclose the vendor's lien reserved in her deed to Eliza Jones, making J. B. Jones, Eugene H. Jones and Willie Jones defendants thereto; this suit being numbered 1,164 on the docket. Final decree ordering sale to satisfy amount due (*i. e.*, $3,850) and costs was in time rendered, the lands were sold and bought in by M. C. Matthews for

$264, in April, 1883, and this sale was in due time confirmed. On same day she conveyed all the lands to J. B. Jones, the husband of Eliza Jones, for $3,850. On the same day J. B. Jones conveyed to Mrs. N. E. Ford the land in controversy (720 acres) for $5,500 ($1,000 cash, balance evidenced by promissory notes, and secured by vendor's lien, which notes were assigned to Matthews by Jones to secure Jones' notes to Matthews). On October 2, 1887, Willie Jones became twenty-one years of age, and on February 9, 1888, he appealed from the decree rendered against him in the foreclosure suit brought by M. C. Matthews against the heirs of Eliza Jones. The supreme court on May 21, 1888, reversed the case, because the record failed to show proper process for the minor, Willie Jones, or that the court had acquired jurisdiction over him. On October 10, 1888, Mrs. M. C. Matthews filed an amended bill in said original foreclosure suit (No. 1,164) against same parties, reciting above facts, and further that Mrs. N. E. Ford had paid a large part of the purchase money for the 720 acres due by her to J. B. Jones, and by J. B. Jones assigned to Matthews, but that there were still $3,100 due on the Eliza Jones notes; that complainant did not seek to subject the Ford 720 acres (the land now in controversy), did not aver that the original process had been properly served as to the minor, Willie Jones, and did not ask to have the return thereon amended, but asked for a decree to sell the other portion of the land. On May 15, 1889, another final decree was rendered against J. B. Jones, Eugene H. Jones and Willie Jones for the sum of $3,971.48, and the original tract, less the Ford 720 acres, ordered sold. On August 5, 1889, the lands described in the decree were sold, and M. C. Matthews became the purchaser, bidding therefor the sum of $4,038, and sale duly confirmed on November 14, 1889. This sale did not include the lands involved in this litigation.

Eugene H. Jones died intestate in 1889, leaving complainants, Tansey Gibson, Lora and J. B. Jones, Jr., as his heirs. J. B. Jones, the husband of Eliza Jones, died in April,

1899, thus terminating the estate by the curtesy. Willie Jones, in 1899, conveyed one-fourth of his one-half interest in the 720-acre tract to R. P. Willing, Jr., Willing conveyed to Kate L. Barlow, and afterwards Willie Jones conveyed the remainder of his interest in said 720-acre tract to Kate L. Barlow, so that said Kate L. Barlow became the owner of all the interest of said Willie Jones in the land in controversy. On January 11, 1890, N. E. Ford executed a trust deed on land in litigation to secure indebtedness due Francis Smith, Caldwell & Co., which is still unpaid. On May 26, 1891, she executed a junior trust deed to secure certain indebtedness due H. H. Barlow. The land was sold by the trustee under this junior trust deed, and on September 20, 1897, H. H. Barlow became the purchaser at said trustee's sale. Later C. C. Currier, trustee, advertised the land for sale under the Smith, Caldwell & Co. trust deed, said sale to be made on March 19, 1900. The original bill of complaint herein was filed on March 14, 1900. At that date matters stood as follows: C. C. Currier, trustee for Francis Smith, Caldwell & Co., held trust deed on entire 720 acres from N. E. Ford. H. H. Barlow claimed entire tract as purchaser at foreclosure sale under junior trust deed executed by N. E. Ford. Tansey Gibson (sister of H. H. Barlow) and her two children claimed half interest in the land as heirs at law of Eugene H. Jones, deceased, and Kate L. Barlow (wife of H. H. Barlow) claimed half interest in the land as vendee of Willie Jones. The original bill of complaint made Currier, trustee, and Smith, Caldwell & Co., beneficiaries, defendants. An amended bill was filed, joining H. H. Barlow as defendant. The bill set out the above facts; averred that the original decree in No. 1,164 was void as to both Eugene H. Jones, the adult, and Willie Jones, the minor; that N. E. Ford only acquired the life estate of J. B. Jones in the land, and that estate had terminated by the death of J. B. Jones. The answer of Currier, trustee, and Smith, Caldwell & Co. admitted most of the facts, but denied the allegation of ownership by complainants; denied that the original

decree in No. 1,164 was void as to either Eugene H. Jones or
Willie Jones; denied that N. E. Ford only acquired the life
estate of J. B. Jones, but averred that, even if the decree in No.
1,164 was voidable as to Eugene H. Jones or Willie Jones, one·
or both, still the said N. E. Ford acquired title in fee simple,
for the reason that she purchased and paid for the land after the
rendition of the original· decree in No. 1,164, and before appeal,
in good faith, and without notice of any alleged defect in the
process or decree, and that any right to proceed against her was
barred by the statute of limitations of two years. The answer
further denied that H. H. Barlow had title, because the sale to
him was by collusion with N. E. Ford; that H. H. Barlow was
the real complainant, and that he was estopped by his conduct
with Smith, Caldwell & Co. to question the validity of their trust
deed, and that Kate L. Barlow was also estopped, as being a party
to her husband's fraud. Currier, trustee, and Smith, Caldwell &
Co. also filed a cross-bill, asking for affirmative relief; averring
that, notwithstanding the reversal of No. 1,164 by the supreme
court, the decree therein was in fact valid and binding on all
parties, because, while it is true that the process for the minor,
Willie Jones, was defective, it was a further fact that all the
jurisdictional facts necessary to give the court jurisdiction of
his person did in truth exist, even though they did not appear in
the record of suit No. 1,164. They asked to be permitted to
show this, and to have the process in No. 1,164 amended, and
the decree declared valid and binding. Much proof was taken,
and upon final hearing a decree was rendered dissolving the in-
junction as to the sale of the half interest of Eugene H. Jones
in the land, and perpetually enjoining the sale under the trust
deed to C. C. Currier, trustee, of the half interest of Willie
Jones. Tansey Gibson, Lora Jones and J. B. Jones, Jr., appeal,
and Currier, trustee, and Francis Smith, Caldwell & Co. prose-
cute a cross-appeal.

This court decided in *J. P. Matthews* v. *J. B., Eugene H. and
Joseph W. Jones,* 4 South, 547, that the decree of the chancery

court in No. 1,164 (the original decree) was void as to the minor, Joe Willie Jones, because that court had not acquired jurisdiction over the minor, by reason of the failure to serve the process as required by law. Cooper, J., delivered the opinion of the court, which was as follows: "There is nothing in the record from which the court can find that the process for the infant, J. W. Jones, was served upon the father, mother or guardian, or that the infant had no father, mother or guardian in this state; and only upon such service, or upon its appearing that the infant had no father, mother or guardian in the state, could the court acquire jurisdiction over him by personal service only. Code 1880, § 1531 (1530); *Erwin* v. *Carson,* 54 Miss., 282. It may be that J. B. Jones, one of the defendants, is the father of said infant; but, in the absence of such fact of record, the court cannot assume it to be true. The final decree is of an inseparable character, and a reversal as to the infant necessitates a reversal as to all parties." And this was so held, and correctly held, though the bill in No. 1,164 averred that Eliza Jones was dead, and that J. B. Jones was her husband, and that Joe Willie *et al.* were her heirs. There is no statement in all this that J. B. was the father, or Eliza the mother, or who were children, if any. It was not a merely erroneous decree. It was, as to the minor, Joe Willie Jones, absolutely void. It could not have been otherwise, since the court acquired no jurisdiction and service, as required by law, on the minor, was a condition of jurisdiction. That judgment of this court was the law of that case. It nowhere appeared in the record that the process for the minor, Joe Willie Jones, had been served on the father, or that he did not have a father living in this state. All parties so understood the decision, as shown by the statement in the amended bill filed when the cause was remanded. The statement is as follows: "No effort has ever been made by the complainants to enforce this decree (the original decree), because, as hereinbefore shown, the reversal of the original decree obtained by M. C. and J. P. Matthews against J. B., E. H. and J. W. Jones, or William

Jones, as he is described in said proceedings, rendered any effort to enforce the last-obtaind decree against J. B. Jones useless, and of no effect." And again the amended bill recites: "Complainants do not ask to subject said last-described land"—the very 720 acres here involved. It may be noted, in passing, that the 720 acres here involved were deeded by J. B. Jones to Mrs. N. E. Ford; that she gave a senior trust deed on this land to secure the appellees, and a junior one to secure H. H. Barlow, and that he foreclosed his trust deed, and that Mrs. Ford has now, and when this present litigation began, had no sort of interest in the result of this suit. It may further be remarked that J. B. Jones' interest was not identical with, but antagonistic to, that of his minor son, Joe Willie Jones (he, the father, being tenant by the curtesy), and that he actually bought the lands at the sale under the original decree in No. 1,164 for the very purpose of cutting out his children's title. And finally it may be said, in this view, that the evidence abundantly shows that the mortgage company's security on Eugene Jones' half interest will be more than sufficient to pay off its debt. Mrs. Ford, therefore, is not harmed, for she has no interest to be affected, and the creditor, mortgage company, is not harmed, because it is abundantly secured. These are observations by the way, however. We must determine the case according to law, in view of the settled rule that the chancery court must carefully protect infants' rights, no intendments against them being allowed.

In pursuance of this statement, as shown in the statement of facts given above, all effort by the complainant in that cause to subject the interest of said minor in the lands now in controversy was abandoned. Years afterwards, when Mrs. Barlow had become the owner of this minor's interest aforesaid, this present bill was filed, and the answer thereto was made a cross-bill; and in this cross-bill the prayer is, in part, that at this late day the court, at the instance of those who were entire strangers to the original suit to foreclose, should allow these strangers to have the process amended so as to show that said minor, Joe Willie

Jones, did have a father, and that he was served with a copy on his own account, because of his interest as a defendant. The effort was not to have the amendment so made as to show that the process for the minor was served by handing a true copy to the father, as part of the service on the minor, but simply to show that one copy was handed to a person who was the father, that copy being handed to him as a defendant, and not as a part of the service on the minor—relying on *McIlvoy* v. *Alsop,* 45 Miss., 374. It does not appear that any further effort was made to have the court allow the amendment, save to so pray in the cross-bill. The court's attention was never again called to it by offer to make the proof or otherwise. But it is assigned for error, on this state of the record, that the court refused to allow the amendment to be made. We think the action of the court was correct. There is a broad distinction between the *McIlvoy* v. *Alsop* case and this case. In that case the bill averred (p. 373, 45 Miss.) that there was no guardian, and that the only surviving parents were the mothers; and the summons itself (page 366, 45 Miss.) commanded the sheriff to serve "Mary A. Exum and her children, Kinchen W. Exum, Robert D. Exum, and E. W. Exum, and Lucy O. Exum and her children" (naming them); thus, on its face, showing that the minors there had mothers, and naming them Mary A. and Lucy Exum. It was therefore shown in that case, in two ways, by the record, that the minors there had mothers, and who those mothers were, and that they had no guardian or father: (1) The bills showed there were no guardians or fathers, and that Mary A. and Lucy were the mothers; and (2) the summons itself showed that they had mothers, who the mothers were, and that the mothers were co-defendants, and the return showed that the mothers were served by handing each one a copy on account of their own interest as defendants. In other words, the record there did somewhere show that there were no guardians for the two sets of minors, that both the fathers were dead, and who the mothers were, and that they were served as defendants, with a copy each. Here the record

nowhere shows that this minor, Willie Jones, had no guardian, nor that he had no father in this state, nor that his father and mother were dead, nor does it show that the father was served as such, either in the summons or in the return. And yet the fact is that his father was living, and that he was a co-defendant, and that he had a copy handed to him by name, as co-defendant, but it was not shown by process or return or anywhere that he was the father. It is perfectly obvious that this case is different from *McIlvoy* v. *Alsop* in the particular being discussed. On the record, therefore, as it appeared to this court when the opinion was rendered by Cooper, J., it is clear that the decree was utterly void, and the lower court had no jurisdiction over the person of the minor, Willie J. Jones.

Counsel for appellants insist that whether the court had jurisdiction depended upon the fact of service, and not upon the recitation of that fact. If that was a correct statement, as an abstract legal proposition, it no way helps appellants. For the fact is here that the father was not served as father, but simply as a co-defendant. Another fact is that nowhere was it shown that there was no guardian, no mother or father. The amendment, to avail anything, must necessarily have gone far beyond the prayer for amendment, and have shown not only that the person served was the father, but also that there was no guardian in this state. In truth, the prayer was in effect, to amend the process, as well as the return. It was properly refused.

Before passing from this point, we call attention to the fact that the case of *McIlvoy* v. *Alsop, supra,* has been clearly overruled by the case of *Erwin* v. *Carson,* 54 Miss., 284. So far as the holding in the former that it is enough, when serving a minor who has no father or guardian in the state, when the mother is a co-defendant, to hand the minor a copy, and the mother a copy, not as mother, and part of service on the minor, but as a co-defendant, the court, carelessly enough, observes that "it would have been an idle ceremony to have given the mother two copies." How can that which is a condition of jurisdiction

ever be "an idle ceremony ?" If, as may often be the case, the interests of the minor and the mother are antagonistic, how is the peremptory mandate of the statute complied with by simply giving the mother—the surviving parent—a copy in his or her capacity as defendant only ? In *Ingersoll* v. *Ingersoll,* 42 Miss., at p. 162, that great common-law jurist, Peyton, J., speaking for the court, said: "The process that was served on Caroline Ingersoll should have also been served on her father, mother or guardian, if she had any in the state; and, if not, that fact should be stated in the return, in order to justify the appointment of a guardian *ad litem* for her." In *Erwin* v. *Carson,* Campbell, J., said the court was asked to overrule *Ingersoll* v. *Ingersoll.* Instead of doing that, the court distinctly reaffirmed it, modifying it in the single respect that the sheriff should, in his return, set out that there was no father, etc., in the county, instead of in the state. But in all other respects *Ingersoll* v. *Ingersoll,* on mature consideration, and in meeting a direct assult upon it, was upheld and maintained. Campbell, J., says: "As the process for an infant is to be served on the father, mother or guardian, 'if he have any in the state,' and as such may be in his county, the sheriff should return that he has executed the process on the father, mother or guardian, or that there is none such in his county; and upon this return, if it shows no father, mother or guardian in that county, it may and should be shown to the court that the infant has no father, mother or guardian in any other county of this state, and this fact should be recited in the decree for the appointment of a guardian *ad litem.* Until the process is executed on the father, mother or guardian, or it is made to appear that the infant has none in this state, the court cannot legally appoint a guardian *ad litem* for such infant, for service on the father, mother or guardian, if any in this state, is part of the required service on the infant." Note the expression "service on the father, mother or guardian, if any in this state, is part of the required service on the infant." This is squarely in conflict with the statement that one copy to the mother, as co-defend-

ant, is enough, in *McIlvoy* v. *Alsop.* The copy the sheriff served on the mother in that case was given her in her capacity as defendant, and most emphatically not "as part of the required service on the minor." The whole of the service the statute requires on the minor, and not part of it, is necessary to give jurisdiction over the minor. The doctrine thus clearly announced by Campbell, J., is undoubtedly the true construction of the statute, and is in harmony with decisions elsewhere on the same statute. See 10 Enc. Pl. & Pr., pp. 604, 607, pointing out that "where the person required to be served is also a party defendant," as here, he must be specially served for the infant, in order to bring the latter before the court, citing *Cook* v. *Rogers,* 64 Ala., 406; *Hodges* v. *Wise,* 16 Ala., 509; *Helms* v. *Chadbourne,* 45 Wis., 60; and other cases. We regard that part of *McIlvoy* v. *Alsop* as overruled, therefore, by *Erwin* v. *Carson, supra,* which was followed and approved in *Moody* v. *McDuff,* 58 Miss., 751.

There is nothing in the plea of the statute of limitations. The purchase money was not paid. Mrs. Matthews paid no purchase money, did not even credit her bid ($264) on the decree, and did not take possession of the land. L. H. Matthews' testimony shows this. She conveyed to J. E. Jones the day of the purchase, taking his notes. He never paid anything. J. B. Jones on same day conveyed, for $5,500, to Mrs. N. E. Ford, taking her notes. A decree was rendered January 7, 1888, for $3,097, amount of balance of vendor's lien, against J. B. Jones, but no effort was ever made to enforce it, because of the reversal of the original decree by the supreme court. The law is imperative in requiring actual payment. No subterfuge or sham payment will do.

Mrs. Barlow is not connected by any testimony with the facts which are claimed to estop her husband. We think there is no merit in the cross-appeal. So far as Mrs. Ford's good faith is concerned, she knew, through her attorneys, all that was in the record, or ought to have known; and, besides, this statute of limitations does not mean the good faith of a purchaser from a purchaser. *Jeffries* v. *Dowdle,* 61 Miss., 504.

*Affirmed on appeal and cross-appeal.*

CALHOON, J., delivered the following dissenting opinion.

I dissent from the affirmance on the cross-appeal, and now give my view of the law and facts. The facts I state are undisputed.

On September 5, 1879, Mrs. Matthews conveyed the land in controversy, together with other land, to Mrs. Eliza Jones, for $3,300, on credit; the notes for the purchase price bearing ten per cent interest per annum after January 1, 1880. Mrs. Jones, the purchaser, died intestate on September 10, 1880, before the Code of 1880 became the law. Thereupon her husband, J. B. Jones, took the land for life as tenant by the curtesy; and her two children and only heirs, Eugene H. and J. W. Jones, became the owners of the fee, subject to this life tenancy, and they all three held subject to the vendor's lien held by Mrs. Matthews. On November 25, 1882, Mrs. Matthews filed her bill in chancery to enforce her lien, making the surviving husband and two children parties defendant. Of these children, J. W. Jones was a minor. Process was duly issued and served on all three of the defendants, but served on all, as if all were adults; and the record nowhere shows that J. B. Jones was the father, as he in fact was, of the minor, J. W. Jones. In the proceeding, however, on motion of Mrs. Matthews, the complainant, a guardian *ad litem,* was appointed for the minor, who made answer for him, *pro confesso* was taken against the adults, and final decree rendered for sale of the land to pay the lien notes; and accordingly sale was made by a commissioner to Mrs. Matthews, the complainant, and this sale was duly confirmed. On April 10, 1883, the commissioner conveyed all the land to Mrs. Matthews, the purchaser, and on that same day Mrs. Matthews conveyed all the land to J. B. Jones, and on the same day J. B. Jones conveyed the 720 acres (being part of it), which are the subject of the controversy now before us, to Mrs. N. E. Ford for $1,000 cash, and $4,500 in deferred payments, which were given to Mrs. Matthews as collateral to secure the debt to her from J. B. Jones for the purchase money. There is no pretense that there

was anything but good faith in these transactions, or that there was any actual notice of any defect in the record. Mrs. Ford, in March, 1886, executed a trust deed to secure a loan to pay Mrs. Matthews; and under this, and a renewal of it, the appellees and cross-appellants claim, while appellants and cross-appellees claim as heirs of Eugene H. Jones, and as grantees of J. W. Jones, the former minor, who conveyed on May 9, 1899, his father, J. B. Jones, having died in April, 1899. Now, to take up the thread in chronological order, nearly five years after the decree establishing the vendor's lien of Mrs. Matthews, and the sale under it to her, and her deed to J. B. Jones, and his deed to Mrs. Ford, and two years after Mrs. Ford's trust deed, J. W. Jones, the minor, who reached the age of majority on October 2, 1887, proceeded to take an appeal on February 9, 1888, from that decree; and his appeal resulted in reversal for the sole reason that the record did not show the fact that J. B. Jones was his father, so as to make the process regular under the statute requiring service on the minor and his father, mother or guardian. In the matter now immediately before us, appellants and cross-appellees, as his grantees, and heirs of his brother Eugene H. Jones, deceased, filed their bill to perpetually enjoin sale under the renewal trust deed of Mrs. Ford, and succeeded as to the half interest of J. W. Jones, but the injunction was dissolved as to Eugene's half, and both sides appeal.

The decree is right as to the interest of Eugene H. Jones, and wrong as to the other, in my opinion. There is no ground for distinction between the two. The principle which sustains the title of Mrs. Ford, and which sustains the deed of trust she gave as to the share of Eugene H. Jones, is that the reversal of the decree after the purchase by Mrs. Ford did not affect her rights, nor those derived from her. The same principle applies as well to the half interest of J. W. Jones, the former minor, on account of the defective service of summons on whom the decree was reversed. In fact, the minor was duly served with summons, and so was his father, J. B. Jones, and the court had jurisdic-

tion; but, this not being affirmatively shown by the record, the reversal occurred. The decree was not void, nor subject to collateral attack, but was good until reversed, and a sale under it before appeal from it was good, unless it be true that this rule does not apply where the complainant purchases, and at once sells to a third person in good faith and for value. It is generally agreed that, where a stranger buys under a judgment or decree unappealed from and unreversed, his title is unaffected by the reversal. Some cases hold that the same protection is accorded to a purchase by a party to the suit, and a number hold that the grantee of a plaintiff or complainant thus purchasing is entitled to full protection. I am unable to perceive any good reason for denying to a party who buys from a plaintiff or complainant, who has purchased under a judgment or decree unappealed from and not superseded, the same protection afforded to one who buys at the sale under a judgment or decree unappealed from and not superseded. Without announcing any definite opinion as to this, I hold that on the facts of this case the title of Mrs. Ford is to be treated precisely as if she had bid at the sale by the commissioner, and was unaffected by the reversal. Mrs. Matthews was the mere conduit through which title to part of the land was vested in Mrs. Ford, while title to the other party was vested in J. B. Jones, the father of E. H. and J. W. Jones, all in pursuance of a previous arrangement for that result; and I find no difficulty in treating the case as if Mrs. Ford had purchased at the sale by the commissioner, in which case, by the authorities generally, her title would have been unaffected by the subsequent reversal of the decree. This is not a case where there was no process served on the minor, J. W. Jones, in which case the decree would have been void as to him. He was served, and his father was served, and the court had jurisdiction of the subject-matter and the person; but the record did not show the whole truth, in that it does not show anywhere the actual fact that J. B. Jones was the father of the minor. So I say the decree of the minor was not void, but voidable only, and the title of the inno-

cent purchaser good.  *Campbell* v. *Hays,* 41 Miss., 561; *Hanks* v. *Neal,* 44 Miss., 212; *Harrington* v. *Wofford,* 46 Miss., 31; *Christian* v. *O'Neal,* 46 Miss., 669; *Cocks* v. *Simmons,* 57 Miss., 183; *McLemore* v. *Chicago, etc., R. Co.,* 58 Miss., 514; *Rigby* v. *Lefevre,* 58 Miss., 639. Whatever rights Mrs. Ford had to the whole property she bought went as security to cross-appellees under the first trust deed. It, of course, therefore gave the power to resort to the whole property, not half of it, to the extent of her rights, in satisfaction of the debt it secured. Now, it is not denied that Mrs. Ford was an innocent purchaser for value, with no actual notice of the technical defect in the sheriff's return upon a valid process, and one validly served, as a matter of fact. So, if Mrs. Ford had been the party attacked, and could successfully defend, if she had never executed any trust deed, it is plain that her grantee in her oldest trust deed can also successfully defend. That she could, I do not think a matter of doubt; the defect in the sheriff's return making the decree voidable, and not void, and a purchase under it, before appeal, being protected by what I regard the great weight of reason and authority. In this view, the junior trust deed and the action of the Barlows cut no figure in the case, and it is immaterial whether or not Mrs. Ford has any interest in this litigation, or whether or not the security of the trust deed may be enough on one-half the 720 acres of land. The two-year statute of limita-tions bars appellants and cross-appellees. The sale was in good faith, and the purchase money paid for the land bought by Mrs. Ford, and it was possessed by her. All the conditions prescribed by the beneficent statute (Code 1880, § 2693) exist, and no rea-son appears for failure to apply this statute to the part of the land purchased by Mrs. Ford. The fact that these conditions do not apply to the other part of the land sold under the decree of Mrs. Matthews is no reason for not applying the statute to the land conveyed to Mrs. Ford. *Summers* v. *Brady,* 56 Miss., 10. Payment of the purchase money to the complainant, Mrs. Mat-

thews, is as good as if paid directly to the commissioners. *Natchez Ins. Co.* v. *Helm,* 13 Smed. & M., 183.

I think this case should be affirmed on direct appeal, reversed on cross-appeal, and decree here dissolving the injunction in toto, dismissing the original and amended bills, and for $100, the agreed attorney's fee on dissolution of the injunction, and all costs in this court and the court below to be taxed against appellants and cross-appellees.